Argued May 17, affirmed June 23, petition for rehearing denied
July 25, petition for review denied October 5, 1972

# PUBLISHERS PAPER CO., *Petitioner, v.*
# MORGAN ET AL, *Respondents.*

498 P2d 798

*Paul D. Schultz,* Oregon City, argued the cause for petitioner. With him on the brief were Hibbard, Caldwell, Canning & Schultz, Oregon City.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before LANGTRY, Presiding Judge, and FOLEY and FORT, Judges.

FORT, J.

Petitioner-employer, appellant herein, operates a paper mill in Oregon City, Oregon. Claimant was employed by petitioner in its mill from June 10, 1946, until September 1, 1971. The entire period of employment was in the Ground Wood Department working on wood grinders, or as they are now called, refiners. Claimant reached age 65 on August 31, 1971, and his employment was terminated the following day pursuant to the collective bargaining agreement entered into between petitioner and the Association of Western Pulp and Paper Workers. The collective bargaining agreement dated March 15, 1969, provides in Section 2 that petitioner recognizes the union as the sole collective bargaining agent of all its employes, and in Section 20(d) that

> "[a]n employee will be retired not later than the first month [sic] of the month following his attainment of age sixty-five (65)."

Following his retirement, claimant filed a claim for unemployment benefits and was determined to be eligible for benefits. Petitioner requested a hearing before a referee. The referee imposed a disqualifica-

tion for the reason that claimant "voluntarily left and good cause is not present under this set of circumstances." The Employment Division requested a review of the referee's decision before the Employment Appeals Board. The Appeals Board reversed the referee's decision, concluding that claimant "was involuntarily separated from his work and that there is no basis on which to impose a disqualification under ORS 657.176 because of this separation."

■ The question presented is whether, when an employe retires at the age made mandatory under the collective bargaining agreement pursuant to which he is employed, this constitutes "having left work voluntarily without good cause" within the meaning of ORS 657.176(2). We conclude that it does not.

That disqualification statute provides so far as here relevant:

"An individual whose unemployment is due to:
"* * * * *

"(2) Having left work voluntarily without good cause, * * *
"* * * * * *

shall * * * be disqualified from the receipt of benefits * * *."

While the question has not previously been decided in this state, it has been considered in a large number of states, generally under statutes having a substantially similar provision relating to disqualification from the right to receipt of unemployment benefits. The Annotation at 90 ALR2d 835 (1963) discusses the holdings and at § 9 states:

"The split of authority mentioned in § 2[a], supra, is most clearly discernible in cases involving the question whether an employee who, under the terms of a collective bargaining agreement, is re-

quired to retire, is to be considered as having 'voluntarily' terminated his services for his employer. In several states retired employees have been held eligible for unemployment compensation benefits, while in a few other jurisdictions such benefits have been denied."

The majority view is well expressed in *Campbell Soup Co. v. Div. of Employment Security*, 13 NJ 431, 100 A2d 287 (1953), where the court, speaking through Justice William B. Brennan, Jr., said:

"If the inquiry is isolated to the time of termination, plainly none of the claimants left voluntarily in the sense that on his own he willed and intended at the time to leave his job. On the contrary, each claimant resisted his termination and left against his will only upon his employer's insistence that the contract obligation gave neither of them any alternative but to sever the relationship.

"We think the leaving was involuntary in the statutory sense.

"The act is designed to provide unemployment compensation for workers who ordinarily have been workers and would be workers now but for their inability to find suitable jobs. *Krauss v. A. & M. Karagheusian, Inc.*, 13 N.J. 447 [100 A2d 277] (1953). Benefits are allowable only to claimants who satisfy the eligibility tests prescribed by R.S. 43:21-4 [N.J.S.A.], and who are not disqualified within any of the provisions of R.S. 43:21-5 [N.J.S.A.]. But the act recognizes that in a country such as ours workers are always free to change jobs and to seek work of their choice, except perhaps as this freedom may be restricted by governmental regulations in times of national emergency. The act therefore visits no penalty upon the worker who voluntarily quits suitable work if he has good cause for leaving, and only the limited penalty imposed by subsection 5(*a*) if he leaves without good

cause. The Legislature plainly intended that the reach of the subsection was to be limited to separations where the decision whether to go or to stay lay at the time with the worker alone and, even then, to bar him only if he left his work without good cause. The claimants here did not choose of their own volition to leave the employ of Campbell Soup Company when they were separated. They left because they had no alternative but to submit to the employer's retirement policy, however that policy as presently constituted was originated. Their leaving in compliance with the policy was therefore involuntary for the purposes of the statute." 13 NJ at 435, 100 A2d at 289.

Petitioner points out that immediately following his termination claimant became eligible to and did receive a company pension. Concerning this contention the New Jersey court said:

"Nor is the result different because the termination agreement also provides a pension for the worker. The statutory scheme for compensating unemployed workers for wage losses makes no provision for an inquiry as to individual financial need. An unemployed individual otherwise entitled to benefits is entitled to them however large or small his means may be. * * *" 13 NJ at 437, 100 A2d at 290.

We agree with the foregoing reasoning.

The Employment Appeals Board declined to consider petitioner's claim that the workman was barred under other provisions of the law not determined by the referee, relying on ORS 657.275.⊘

■ Petitioner contends this was error. We note, however, that the Request for Hearing filed by petitioner was on the sole basis that the claimant was not discharged but "was retired under a compulsory retirement program sponsored by his union." Further-

more, the Notice of Hearing issued pursuant to that request stated only that the

"ISSUES ARE:

"* * * * *

"(2) ORS 657.176(1) or (2). Whether claimant's unemployment is due to having voluntarily left work without good cause or was discharged for misconduct with the work.

"* * * * * *"

Neither the Request for Hearing nor the notice thereof contended that the claimant was ineligible under ORS 657.205 or any other provision of the law, as the employer now contends. We think it follows that under those circumstances neither the Hearing Officer nor the Board had jurisdiction to consider grounds not asserted in the Notice of Hearing nor in the Request for Hearing. No claim of discharge for misconduct is here involved.

No other issues according to that notice were noted as being involved in the hearing. Thus only the one set forth above was before the Hearing Officer or the Board.

Affirmed.

---

⊙ ORS 657.275:

"(1) Whenever the administrator or any interested party files with the Employment Appeals Board an application for review and the Employment Appeals Board requires additional evidence to reach its decision it may refer the matter to the administrator who shall designate a referee to secure such additional evidence. If no additional evidence is required the Employment Appeals Board shall promptly and not later than 30 days from the receipt of the application for review, affirm, modify or set aside the findings of the referee and promptly notify the claimant and any other interested party of its decision.

"(2) The decision of the Employment Appeals Board shall become final 10 days after the date of notification or mailing thereof."