Argued May 19, affirmed June 23, 1975

McKINNEY ET AL, *Petitioners, v.* EMPLOYMENT
DIVISION ET AL, *Respondents.*
537 P2d 126

*Dan O'Leary,* Portland, argued the cause for pe-

titioners. With him on the brief were Pozzi, Wilson & Atchison and Jan Thomas Baisch, Portland.

*James H. Gidley*, Portland, argued the cause for respondent Nabisco Incorporated. With him on the brief were Cosgrave & Kester, Portland.

No appearance by respondent Employment Division.

Before LANGTRY, Presiding Judge, and FOLEY and THORNTON, Judges.

LANGTRY, P. J.

Members of the Bakery and Confectionery Workers Union, Local No. 364, and the Operating Engineers Union, Local No. 87, have brought this consolidated appeal from decisions of the Employment Appeals Board denying them benefits for a nine-week period spanning the summer of 1974 during which time they were unemployed as the result of a labor dispute involving their employer—Nabisco Incorporated—and Lodge 63, International Association of Machinists, whose members were responsible for machinery and general repairs at Nabisco's Portland plant.

Petitioners concede that, because their unemployment was "due to a labor dispute," a presumption of ineligibility for benefits is raised by the terms of ORS 657.200(1):

> "An individual is disqualified for benefits for any week with respect to which the administrator finds that his unemployment is due to a labor dispute which is in active progress at the factory, establishment or other premises at which he is or was last employed or at which he claims employment rights by union agreement or otherwise."

An individual initially disqualified by this section

may, however, "requalify" for benefits by "show[ing] to the satisfaction of the administrator" that he/she:

"(a) Is not participating in or financing or directly interested in the labor dispute which caused his unemployment; and

"(b) Does not belong to a grade or class of workers of which, immediately before the commencement of the labor dispute, there were members employed at the premises at which the labor dispute occurs, any of whom are participating in or financing or directly interested in the dispute." ORS 657.200(3).

Among the findings of the Employment Appeals Board were:

"(3) The International Association of Machinists, Lodge 63 had a labor agreement with the employer which expired on March 13, 1974. (4) Negotiations were in progress from that time until June 18, 1974, when negotiations reached an impasse. (5) A picket line was established at the premises of the employer on the morning of June 19, 1974. (6) This strike and picketing of the employer's premises was sanctioned by the Multnomah County Central Labor Council. (7) Article 33, Section 1 of the labor agreement between the employer and the Bakery & Confectionery Workers Union, Local 364 states: 'the company shall not require the union or its members to cross any picket line established by any recognized union in order to perform their duties.' (8) All members of the Bakery & Confectionery Workers Union and the two [petitioners] who were members of the Operating Engineers Union honored the picket lines established by the Machinists Union. (9) Some members of the Operating Engineers Union reported for work and were assigned duties on the boiler watch.

"(10) The Bakery & Confectionery Workers Union, Local 364 has been historically committed to run-

ning off the dough in process at the time of a labor dispute and breaking clean with the company during periods when a labor dispute is in existence * * *. (11) If any member of this union had asked the union officials if the Machinists Union picket line should be honored, they would have been instructed to so honor the pickets * * *. (12) As a result of the strike and establishment of a picket line by the Machinists Union, the employer ceased normal operations. (13) All of the [petitioners] named herein honored the picket line from the time it was established on June 19, 1974 until normal operations were resumed August 19, 1974 * * *."

Noting the absence of any evidence showing petitioners' failure to cross the picket line to have been due to any apprehension of violence or physical injury, the Board held such failure to constitute "participation" in the dispute within the terms of ORS 657.200(3)(a), thereby rendering petitioners incapable of requalifying for unemployment benefits.

■ We may reverse or remand the Board's order only if we find it to be

"(a) * * * unlawful in substance * * * or

"* * * * *

"(d) * * * not supported by reliable, probative and substantial evidence in the whole record * * *." ORS 183.480(7)(a), (d); 657.282; *Wood v. Morgan,* 17 Or App 579, 523 P2d 572 (1974).

Petitioners argue that Findings of Fact (8), (11), (12) and (13) noted above were "incorrect, and even if correct, would not support the Conclusions, Reasons and Decisions" of the Board.

■ Our review of the record here indicates that the factual findings challenged by petitioners are amply supported by reliable and probative evidence. Nabisco's bakery manager testified that subsequent to the

establishment of picket lines by the striking machinists no member of the Bakery and Confectionery Local reported for work until a settlement had been reached, that members of the Operating Engineers also refused to cross those lines within two weeks of the strike's initiation, that there was work available to both bakers and engineers throughout the period of the strike, and that as a result of the unavailability of machinists, bakers, and engineers the normal operations of Nabisco's Portland plant were terminated, with its production being reassigned and raw materials being diverted to other plants in the western states. The secretary-treasurer of Local 364 also testified that its members had "honored" the machinists' picket lines, and that "* * * not one member asked me or my assistant or any other officer that I know of whether they should go through the picket line or not * * *. If the question was asked of me I would have informed them that we are honoring this strike." The testimony of these witnesses alone represents evidence sufficient to support the challenged findings.

It is well settled in Oregon, as in many other jurisdictions,[1] that a voluntary refusal to work behind a picket line—not based upon reasonable and justifiable fear for one's safety—constitutes "participation" within the terms of ORS 657.200(3). If such a refusal occurs and evidence shows that an employe has, of his own volition, declined to cross a picket line while his employer remains willing to maintain him

---

[1] See Various Claimants &. Const. U. v. Employment Sec. Com'n, 92 Ariz 183, 375 P2d 380 (1962); Sangamo Electric Co. v. Donnelley, 26 Ill 2d 348, 186 NE2d 230 (1962); Typographical Union v. Hearst, 246 Md 308, 228 A2d 410 (1967); Soricelli v. Board of Review, &c., 46 NJ Super 299, 134 A2d 723 (1957); Kennecott Copper Corp., Etc. v. Employment Sec: Com'n, 81 NM 532, 469 P2d 511 (1970); Blankenship v. Board of Review, Okl. Emp. Sec. Com'n, 486 P2d 718 (Okla 1971); Glass Ind. M. W. Unempl. Comp. Cases, 7 Pa Commw Ct 385, 298 A2d 700 (1973).

on the payroll and actually has work available, that employe is disqualified for unemployment benefits. *Cameron v. DeBoard; MacInnes*, 230 Or 411, 370 P2d 709 (1962).[2] Acknowledging this to be the rule, those petitioners who are members of the Bakery and Confectionery Workers Union nevertheless contend that, "since they were validly exercising legal rights under binding provisions of the collective bargaining agreement entered into with Nabisco, Inc.," their refusal, albeit voluntary, could not, as a matter of law be characterized as "participation" in the dispute between the machinists and Nabisco.

■ Although Art 33, § 1 of the agreement between the Bakery and Confectionery Workers Union and Nabisco[3] plainly imposes a duty upon the employer to refrain from retaliating against any union member choosing to honor a sanctioned picket line, it does not by its terms obligate any member either to engage in such conduct or to deal in any way with the issue of such a worker's eligibility for unemployment compensation as petitioners suggest. Indeed, assuming that the provision explicitly provided that an employe might voluntarily honor a picket line and still receive unemployment benefits, we see no way we could avoid holding such a labor contract provision invalid as

[2] Department of Industrial Relations v. Drummond, 30 Ala App 78, 1 So 2d 395 (1941), and Wicklund v. Commissioner, 18 Wash 2d 206, 138 P2d 876, 148 ALR 1298 (1943), cited by petitioners in support of their appeal, are distinguishable on the grounds that the employes ultimately awarded benefits in those cases were willing and anxious to continue working under conditions existing at the time picketing by others was begun and actually reported for work until the employers were forced, due to circumstances caused by striking employes, to suspend operations.

[3] "The Company shall not require the Union or its members to cross any picket line established by any recognized Union in order to perform their duties." Agreement, Nabisco, Inc. and Bakery and Confectionery Workers International Union, Local No. 364, Art 33, § 1 (1973-75).

an attempt by the parties to abrogate the clear requirements of ORS 657.200. This alone would prevent us from considering the earnest plea of petitioners that we reappraise the rule of *Cameron*. Another reason, of course, is that this court is bound by pronouncements of the Oregon Supreme Court.

When the principal objective of unemployment legislation may be to alleviate the economic distress imposed upon individuals involuntarily deprived of their means of support, our Supreme Court has noted in *Columbia Management Co. v. Morgan*, 270 Or 109, 118, 526 P2d 571 (1974), that the Act is also designed "to deal with the *social problem* arising from the economic condition of a working man when he becomes unemployed * * *." (Emphasis supplied.) This law thus promotes the interests of both the individual and the public; each has an interest in seeing to it that benefits are provided in accordance with the terms of the Act. Where legislation is intended to secure general objectives of public policy as well as to protect the interests of individuals, it may not be circumvented by private agreement. *See* Soricelli v. Board of Review, &c., 46 NJ Super 299, 134 A2d 723 (1957).

Affirmed.