Argued and submitted March 26, reversed and remanded June 27, 1984

# FERGUSON,
*Petitioner,*

*v.*

# EMPLOYMENT DIVISION et al,
*Respondents.*

## (83-AB-1555; CA A29425)

683 P2d 147

Susan B. Howard, Marion-Polk Legal Aid Service, Inc., Salem, argued the cause and filed the brief for petitioner.

Respondent Employment Division, Raymond P. Thorne, Assistant Director, DHR, waived appearance.

Timothy W. Wilson, Brooks, argued the cause and filed the brief for respondent Drivers Employment Service, Inc.

Before Gillette, Presiding Judge, Van Hoomissen, Judge, and Joseph, Chief Judge.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Petitioner appeals from an order of the Employment Appeals Board that denied him unemployment insurance benefits. The issue is whether he voluntarily left work without good cause.

Petitioner's claim for benefits was sustained by the referee. In reversing the referee, EAB found that petitioner had reasonable alternatives to quitting work and that he therefore quit without good cause. We review to determine whether there is substantial evidence in the record to support the EAB's conclusion. ORS 657.282, 183.482(7) and 183.482(8)(c); *Skookum Co., Inc. v. Employment Div.*, 276 Or 303, 307, 554 P2d 520 (1976). Although we find that there is substantial evidence, at least in the abstract, to support the finding that petitioner had reasonable alternatives to quitting, we nevertheless reverse and remand for a determination whether those alternatives would have been "fruitless."

Petitioner was employed as a long-distance truck-driver. Although his experience was exclusively as a solo driver, he applied for and accepted a job as a team driver. In team driving, one driver sleeps while the other drives. Petitioner had trouble sleeping in a moving truck. As a result, he was too tired to drive when it was his turn. He concluded that he was a hazard to his co-drivers and to the public, and he asked his dispatcher on several occasions for solo driving assignments. He found that his last team trip to Chicago and back was particularly tiring. On returning to Oregon, he again asked his dispatcher if there was any possibility that he could drive solo. His dispatcher told him that he did not know because of the possibility of a strike. The following day claimant told his dispatcher that, while he would like to stay with the company, he was afraid that he was not a safe team driver. The dispatcher told him to quit, and he did so.

If petitioner quit his employment for "good cause," he nevertheless qualifies for unemployment benefits. ORS 657.176(2)(c). OAR 471-30-038(4) defines "good cause" as:

"* * * such that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. The reason must be of such gravity that the individual has no reasonable alternative but to leave work."

The referee found:

"* * * (2) No alternative posing any probability of substantial relief from the problem existed for the claimant at the time of his resignation. (3) The problem is not a common one; an employer witness did note that one other instance of such incompatability had been noted in a driver in his (the witness's) six years' experience with such situations. (4) The claimant had never been guaranteed solo (or even a significant amount of solo) work by the employer. (5) The claimant had guessed that he might have trouble with the job as a team driver, but had taken it initially out of desperation and in hopes that it could be made some way to work out. (6) The claimant had finally concluded in March, after a period of weeks in which there was a constant battle with fatigue, that the job could not work out and that the risks being run were simply not prudent."

He concluded that claimant had good cause for quitting.

EAB found:

"* * * (2) When the claimant was hired, he was told that he would be both a solo driver and a sleeper/team driver. (3) He was also advised that the majority of his work would be in sleeper/team operation. (4) The claimant accepted this employment. (5) The claimant began experiencing difficulties with sleeping in the truck while it was being operated by his co-driver. (6) He spoke to a subordinate dispatcher about receiving a work assignment which strictly involved solo driving. (7) He was advised there was nothing that could be done for him at the local level and that he would have to seek other help within the company, or through his union. (8) The claimant chose not to do so, but quit his employment."

It concluded:

"* * * We do not agree with the decision of the referee. We find that the claimant voluntarily left work without good cause. Good cause for leaving work can be found when the reasons are of such gravity that the individual had no reasonable alternative but to leave work (see OAR 471-30-038). Here, we do not find the situation to be of such gravity. The claimant was advised that if he wished relief from his situation, it would be necessary to talk to others within the company, or ask his union for help. The claimant chose not to do this. If, in fact, the situation were of the gravity the claimant alleges, it would appear he would have taken greater steps to have the situation

remedied. His failure to do so precludes a finding of good cause."

Petitioner contends that the EAB erred in finding that he had reasonable alternatives to quitting. In the alternative, he argues that, if he did have reasonable alternatives, pursuing them would have been "fruitless." There is evidence in the record that petitioner was aware of reasonable alternatives to quitting. Jennings, the employer's director of safety and personnel, testified:

> "I'm in charge of driver hiring, selection, training, driver problems, payroll problems, anything to do with drivers and their actions with the company I get involved in. I set policies. I give safety meetings, all of that in the name of safety and personnel I'm responsible for."

Jennings stated that all drivers are made aware that he is the proper person to approach regarding safety-related issues and that he publishes a weekly newsletter for the drivers to maintain contact with respect to safety-related issues. He further stated that petitioner had never discussed his sleeping problem with him.

Jennings also testified:

> "* * * [T]he only thing we could have done would be, contact the Local Union, and bring the problem up to a joint meeting with them, because if we were to assign Mr. Ferguson strictly solo work, then we would be discriminating against all of our other drivers, and I would be fairly hard pressed to do that.
>
> "Q   Has the union ever made that kind of exception, that you're aware of?
>
> "A.   No."

Petitioner testified that before quitting work he attempted to see his supervisor but that he decided not to wait to see him until the supervisor was finished with a meeting. The Board's finding that petitioner was aware of reasonable alternatives to quitting is supported by substantial evidence.

That, however, is not the end of our inquiry. The referee concluded:

> "* * * It does not appear, based on the claimant's seniority, the number of trucks driven solo, and other details of the employer's operation with which the claimant was well acquainted and about which he had inquired from time to

time, that there was any basis to suppose that relief, even on an intermediate term basis, would be available. That the claimant did not go to the very top of the employer's organization with his problems under these circumstances is not fatal to a finding of 'good cause' for his voluntary leaving of the work."

In *Bremer v. Emp. Div.,* 52 Or App 293, 298, 628 P2d 426 (1981), we recognized that a claimant need not explore "fruitless" alternatives before quitting:

"[W]here the referee holds, and there are facts in the record which could be understood to indicate, that a discussion of reasonable alternatives to leaving work would have been fruitless, the Board must also address this question."

We conclude that EAB'S failure to consider whether petitioner's reasonable alternatives to quitting would have been "fruitless" requires reversal.

Reversed and remanded for reconsideration.