Argued and submitted September 7, 1984, reversed and remanded for reconsideration
February 27, 1985

# LONDAHL,
*Petitioner,*

*v.*

# EMPLOYMENT DIVISION et al,
*Respondents.*

(84-AB-215; CA A31181)

695 P2d 1388

James E. McCandlish, Portland, argued the cause and filed the brief for petitioner.

No appearance for respondents.

Before Joseph, Chief Judge, and Warden and Newman, Judges.

WARDEN, J.

**WARDEN, J.**

Claimant petitions for review of an order of the Employment Appeals Board that adopted a referee's order denying her unemployment benefits. We reverse and remand.

Claimant, who is mentally handicapped, was employed as a bus person at The Hickory Stick Restaurant from November 1976 to October 1983. The issue presented is whether she voluntarily left her employment without good cause. ORS 657.176.(2)(c). OAR 471-30-038(4) defines "good cause":

> "[S]uch that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. The reason must be of such gravity that the individual has no reasonable alternative but to leave work."

The referee heard testimony from claimant, claimant's job counselor and the bookkeeper/catering manager of claimant's employer. Claimant testified that, during her approximately seven years of employment at the restaurant, she repeatedly was subjected to demeaning comments of co-workers, who called her "fatso," "stupid" and "retarded." Claimant indicated that the problem was exacerbated when the restaurant was taken over in early 1982 by Mr. Chow, who was of Korean descent and had difficulty communicating in English and who also called her "fatso." Roach, a vocational development coordinator at the Clackamas Challenge Center (a work activity center for handicapped adults), testified that, in December 1982, claimant had told him about the verbal harassment and that she felt demeaned at work; claimant was placed in a "job stabilization" program in an attempt to help her adjust to or deal with the situation. In August 1983, Roach also contacted Chow, but Chow indicated that he could not express himself adequately. Roach then talked with Chow's bookkeeper/catering manager, who expressed the belief that claimant's problems stemmed from Chow's language difficulties. The bookkeeper/catering manager also testified that she believed claimant's job problem was a lack of communication between claimant and Chow, but she felt that the problem had been resolved.

The referee made the following findings of fact:

> "(1)   The claimant was employed as a bus person by the

above employer from 1976 until October 18, 1983. (2) She was upset with comments made by other employes. (3) New owners took over this business in 1982, and they had a problem understanding the claimant. (4) They thought the claimant was deficient in performing very simple tasks. (5) Generally, they were satisfied with her job performance. (6) The claimant sought assistance in December 1982 from a counseling service. (7) The counselor talked to the employer in August 1983 about the claimant's difficulties with this particular employment. (8) The employer believed that the problem was solved. (9) The claimant felt that she still was being subjected to ridicule and left this employment as of October 18, 1983."

He concluded:

"The claimant did have difficulties working at this employer's business because of a communication problem. This created a personality conflict between the claimant and the owner. It is recognized that the claimant did try to work out the problems through her counselor, but in the claimant's opinion, this was to no avail. No one likes to be called names. However, a reasonable and prudent person of normal sensitivity would have ignored or attempted to avoid the problems. This is the type of person used as a standard in determining whether good cause exists to leave continuing employment. 'Good cause' as defined by [OAR 471-30-038(4)] has not been established in this matter."

The Board, with one member dissenting, adopted the referee's decision.

Claimant makes alternative arguments in support of her contention that the Board erred in adopting the referee's order. First, she argues that the evidence demonstrates that she was, in fact, subjected to continuing harassment and ridicule and had explored reasonable alternatives to leaving work and that, therefore, as a matter of law, she should be deemed to have left work with good cause. Second, she argues that the opinion fails to demonstrate a rational relationship between the facts found and the conclusion.

It is not the function of this court on judicial review to re-evaluate the facts. *See* ORS 183.482(8)(c). We conclude, however, that the conclusion reached by the referee and adopted by the Board cannot be drawn from the facts *as found* by the referee. The referee found that upsetting comments

were made to claimant by co-employes, that claimant had sought the assistance of a counseling service in handling the situation and that the counselor had talked to the employer about claimant's problem, all to no avail. Those findings are supported by substantial evidence. They do not support the conclusion of the Board that there was a lack of good cause shown. A worker is not required to "sacrifice all other than economic objectives and * * * endure * * * personal abuse, for fear that abandoning an oppressive situation will disqualify the worker from unemployment benefits." *McPherson v. Employment Division,* 285 Or 541, 557, 591 P2d 1381 (1979).

Reversed and remanded for reconsideration.