Argued and submitted January 7, affirmed December 26, 1985, reconsideration denied February 14, petition for review allowed May 28, 1986

TELEDYNE WAH CHANG ALBANY,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(84-AB-476; CA A31254)

712 P2d 154

Jeffrey M. Batchelor, Portland, argued the cause for petitioner. On the brief were William F. Lubersky, Richard C. Hunt, and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Linda J. DeVries, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Charles S. Tauman, Portland, argued the cause and filed the brief for the individual respondents.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

Warren, J., dissenting.

## ROSSMAN, J.

Employer seeks review of a decision by the Employment Appeals Board that claimants were unemployed and were not otherwise disqualified from receiving unemployment benefits. We affirm.

Claimants are employed by Teledyne Wah Chang at its Albany plant and are represented there by the United Steel Workers of America. The collective bargaining agreement in force at the plant provided for an "annual vacation shutdown," to be implemented at employer's discretion. Employer implemented a shutdown from August 13 to September 10, 1983. The contract provided that at the time of a shutdown each employe was "required to use all vacation awarded as of [that employe's] last anniversary date," with the exception of certain reservable vacation time. Employes with three or more years of service could reserve seven days of their annual vacation to be taken at times other than the annual vacation shutdown. Employes with ten or more years of service could reserve up to ten days. In addition, employes could use vacation time earned since their last anniversary date ("accrued but not yet awarded") during the shutdown but were not required to do so. If vacation time were used, employes would receive vacation pay. Employes choosing to reserve vacation hours during the shutdown would be considered to be on "leave of absence without pay."

According to these provisions, claimants chose to use vacation time and to receive vacation pay for a part of the shutdown period. They received no unemployment benefits for that time. For the remainder of the shutdown, however, they chose to reserve their vacation time and to receive no vacation pay; for that time, EAB awarded unemployment benefits.

The first issue is whether claimants were unemployed during the time when they chose to reserve their vacation time and receive no pay. ORS 657.100(1) provides, in part:

> "An individual is deemed 'unemployed' in any week during which the individual performs no services and with respect to which no remuneration for services performed is paid or payable to the individual * * *."

Employer concedes that claimants performed no services

during the period in question. It contends, however, that remuneration was *payable* to claimants in the form of the reserved vacation pay.[1]

Employer's contention is mistaken, because it is based on a misinterpretation of ORS 657.100(1), where the term "remuneration" is identified with the week in which an individual either performed or did not perform services. The essential inquiry, therefore, is whether the claimant performed services during the period in question and whether any remuneration was paid or payable *for that period. See Pa. Elec. Co. v. Com., Unempl. Comp. Bd.,* 73 Pa Cmwlth 258, 458 A2d 626, 628-29 (1983).

That meaning is supported by common sense. Given that there is a time period to which to refer to determine whether an individual is unemployed, a choice must be made concerning the allocation of remuneration. The only sensible choice is to allocate remuneration to the time period for which the services were rendered. For example, if an individual performs services for weeks one and two, is laid off for weeks three and four, and receives his wages at the end of week four, during which weeks was that individual unemployed? Clearly, he was unemployed during weeks three and four. Remuneration is allocated to the period in which services were performed.

■ The reserved vacation pay was earned and payable with respect to earlier weeks of service, and not with respect to the weeks that claimants were on "leave of absence." Therefore, according to the terms of ORS 657.100(1), claimants' reserved vacation pay was not remuneration that was payable to them.[2]

We believe that the dissent's interpretation of ORS 657.100(1) is contrary to legislative intent and public policy. First, it is inconceivable that the legislature intended "remuneration for services performed" to refer to services

---

[1] Employer also contends that remuneration was *paid* to claimants in the form of medical, dental and vision insurance. This contention lacks merit, because the Employment Division Law excludes such payments from the definition of remuneration. ORS 657.105(1); 657.115(1).

[2] Employer does not argue that claimants received remuneration in the form of vacation pay accrued during the benefit week.

performed "at any time," as the dissent concludes. If remuneration is not allocated to the week or weeks in which it was earned, that is, when the services were performed, then remuneration "paid" in a week other than when it was earned disqualifies nonworking claimants for that week; and remuneration that is "payable" has the unfortunate effect of continuously disqualifying a nonworking claimant until it is paid.

Second, the dissent's policy argument is misconceived, because it fails to recognize that a "vacation shutdown" is imposed at the employer's discretion, undoubtedly for economic reasons. The fundamental undisputed fact is that there was no work available at the plant for these claimants. The terms of the collective bargaining agreement do not change that fact and must not obscure it. Thus, the dissent is mistaken when it suggests that the majority would allow claimants to enjoy an "extra week of partially-compensated vacation." In fact, we are simply allowing claimants to receive unemployment benefits during a time in which there was no work available to them. What we do not do, as the dissent would, is essentially to require claimants to take all of their vacation time during the plant shutdown. Union and management have not agreed to that requirement in their collective bargaining agreement. We should not accomplish here for management what it has not accomplished at the bargaining table.

■ The second issue is whether claimants voluntarily left work. ORS 657.176 provides, in part:

"(2) An individual shall be disqualified from the receipt of benefits * * * if * * * the individual:

"* * * * *

"(c) Voluntarily left work without good cause * * *."

Employer first contends that claimants were voluntarily unemployed, because they chose to take unpaid "leaves of absence" rather than vacation pay. Employer's contention is flawed, because it is based on the assumption that the phrase "leave of absence" in the collective bargaining agreement indicates that claimants voluntarily left work; however, it does not. An employe's eligibility for benefits does not depend on terms found in a collective bargaining agreement. *McKinney*

*v. Employment Division,* 21 Or App 730, 737, 537 P2d 126 (1975).

█    It is undisputed that, although claimants were willing to work, there was no work available during the period in question. It is also undisputed that their leaves of absence were authorized by the collective bargaining agreement. We hold that an authorized leave of absence does not constitute grounds for disqualification from unemployment benefits if the employe was willing to work but was not allowed to do so. *See* OAR 471-30-038(2).

Employer next contends that claimants were voluntarily without work because they agreed, through their union, to allow employer to impose the plant shutdown at its discretion. To support this contention, employer relies on *Stanley v. Employment Division,* 43 Or App 905, 607 P2d 1195, (1979), *rev den* 289 Or 1 (1980), which presented the flipside of the factual situation involved in this case, because it considered the unemployment claims of Wah Chang employes who had elected to take vacation pay during a plant shutdown in 1978. The employer did not contest, as it does here, the employes' claims for benefits for the time during the shutdown when they had elected not to receive vacation pay but chose leaves without pay instead. Because *Stanley* involved the effect of vacation payments on unemployment benefits, the case turned on an interpretation of ORS 657.150(8) (*amended by* Or Laws 1983, ch 51, §1), which provided:[3]

> "Payment made to an individual for vacation taken shall be considered in the determination of the amount of benefits payable with respect to the vacation period * * *; however, notwithstanding any other provision of this chapter, vacation payments made to an individual who is terminated, or placed on layoff status, shall not constitute a disqualification and benefits payable under this chapter shall not be denied or reduced because of receipt of any such payment."

The court held that, because the employes voluntarily took vacations and received vacation pay during a plant shutdown, the first clause of that statute applied and that, therefore,

---

[3] The parties here agree that ORS 657.150(8) does not govern this case, because we are not considering the effect of vacation pay on unemployment benefits.

employes had to offset vacation payments against unemployment benefits.[4] 43 Or App at 911. The vacation period was voluntary because, during the shutdown, the employes chose to take some vacation time rather than only time on leave without pay, as they could have done. However, in *dictum,* the court also stated that, even if the employer had the right under a collective bargaining agreement to impose a vacation period during a plant shutdown, the first clause of ORS 657.150(8) would apply, "because the collective bargaining agreement has been ratified by the employes and the vacation period is in that sense voluntary." 43 Or App at 911 n 3.

In this case, employer relies on that *dictum* for its contention that claimants were voluntarily without work, because they agreed through their union to allow employer to impose the plant shutdown. However, we conclude that employer's reliance on *Stanley* is misplaced, because the issue of whether an employe has voluntarily taken a vacation period and received vacation pay for purposes of ORS 657.150(8) is distinct from the issue of whether an employe has voluntarily left work for purposes of ORS 657.176(2)(c).[5] Furthermore, we disapprove the *dictum* to the extent that it lends support to employer's contention, because the issue of whether a claimant is bound by the agreements of his union for purposes of determining whether he has voluntarily left work was decided in *Publishers Paper Co. v. Morgan,* 10 Or App 94, 498 P2d 798 (1972). We held that, when an employe retires at the age made mandatory by the collective bargaining agreement under which he is employed, this does not constitute "having left work voluntarily without good cause" within the meaning of ORS 657.176(2). 10 Or App at 96. We agreed with the reasoning in *Campbell Soup Co. v. Div. of Employment Security,* 13 NJ 431, 435, 100 A2d 287 (1953):

> "If the inquiry is isolated to the time of termination, plainly none of the claimants left voluntarily in a sense that on his own he willed and intended at the time to leave his job. On the contrary, each claimant resisted his termination and

---

[4] Claimants here did not claim benefits for the time during the shutdown that they received vacation pay.

[5] This distinction is implicitly recognized in *Stanley,* because the court commented that, for the time during the shutdown that the employes had chosen to take leaves without pay, they were eligible for unemployment benefits. *Stanley v. Employment Division, supra,* 43 Or App at 909, 911.

left against his will only upon his employer's insistence that the contract obligation gave neither of them any alternative but to sever their relationship.

"* * * * *

"* * * The legislature plainly intended that the reach of the subsection was to be limited to separations where the decision whether to go or to stay lay at the time with the worker alone and, even then, to bar him only if he left his work without good cause. * * *"

Concerning the issue of whether a claimant voluntarily left work, we see no important distinction between a negotiated vacation shutdown and a negotiated permanent retirement age. Therefore, EAB correctly decided that claimants did not voluntarily leave work.[6]

Affirmed.

**WARREN, J.,** dissenting.

I disagree with the majority's construction of ORS 657.100(1) and its conclusion that claimants were "unemployed" within the meaning of that provision. ORS 657.100(1) provides:

*"An individual is deemed 'unemployed' in any week during which the individual performs no services and with respect to which no remuneration for services performed is paid or payable to the individual,* or in any week of less than full-time work if the remuneration paid or payable to the individual for services performed during the week is less than the individual's weekly benefit amount." (Emphasis supplied.)

This case is controlled by the italicized portion of the above provision, because it is not disputed that claimants performed no services during the weeks for which they claimed unemployment benefits.

The first clause of ORS 657.100(1) provides that a person is considered unemployed in any week (1) during which

---

[6] Employer assigns as error "the Board's failure to review the referee's decision de novo." This assignment has no merit. The Board expressly stated that it had reviewed the entire hearing record, and it adopted the referee's findings and conclusions. There is no error in that procedure. ORS 657.610; OAR 472-10-020; *Skookum Co., Inc. v. Employment Div.,* 276 Or 303, 554 P2d 520 (1976); *Paillette v. Employment Division,* 59 Or App 598, 651 P2d 1087 (1982).

he performs no services *and* (2) "with respect to which no remuneration for services performed is paid or payable." The critical issue in this case is not when the services are performed, as the majority states, but rather what is meant by "any week * * * with respect to which no remuneration for services performed is * * * payable." The majority interprets the first clause as if it were written: "An individual is deemed 'unemployed' in any week during which the individual performs no services for which remuneration is paid or payable." This construction ignores the express language of the statute, "and *with respect to which* no remuneration * * * is paid or payable." (Emphasis supplied.) I read the statute to mean that an individual is deemed 'unemployed' in any week during which the individual performs no services and with respect to which no remuneration for services performed *at any time* is paid or payable.

My interpretation is supported by the language of the statute in its entirety and by public policy considerations. The second clause of ORS 657.100(1), that part after the comma dealing with part-time work, refers to "remuneration paid or payable * * * for services performed during the week." The absence of the language "during the week" to modify "for services performed" in the first clause indicates that the legislature intended the phrase "for services performed," used in the first clause, to refer to services performed at times other than the week for which a claimant seeks to be deemed unemployed.

Under my interpretation of the statute, an individual is not unemployed in a week "with respect to which * * * remuneration for services performed [at any time] is paid or payable." If an employe may demand and is entitled to receive wages for a period of time when he is not working, wages are payable for that period. Paid vacation leave should be considered remuneration for services performed. In addition to a wage or salary, a worker earns the right to be paid for days on which he does not work. If a worker chooses to take paid vacation days during a certain week, he is paid remuneration with respect to that week for services which he performed in prior weeks. For the weeks in which claimants received vacation pay, they were not unemployed, because remuneration for services performed was "paid." It follows that, for

weeks in which they could have requested and received vacation pay but chose not to, remuneration for services performed was "payable," *i.e.,* "capable of being paid." *Webster's Third New International Dictionary* 1659 (1976).

Public policy also supports my interpretation. An employe who could take a paid week's vacation during a plant shutdown but chooses to defer it until a later week should not be considered unemployed for the week of the shutdown. The worker who defers the vacation, under my view would receive only one week's pay for the two weeks off work. Under the majority's view, that worker would enjoy two weeks off work, for which he will receive one week of pay and one week of unemployment compensation. This difference amounts to a state and employer-sponsored extra week of partially-compensated vacation. The unemployment compensation laws should not be construed to provide compensation for time off work during which the employe voluntarily chooses not to receive pay to which he is entitled.

The majority misreads my alternative interpretation of 657.100(1), when it states

> "* * * If remuneration is not allocated to the week or weeks in which it was earned, that is, when the services were performed, then remuneration paid in a week other than when it was earned disqualifies nonworking claimants for that week; and remuneration that is payable has the unfortunate effect of continuously disqualifying a nonworking claimant until it is paid." 77 Or App at 152.

I do not think that a claimant who performs no services in a week should be disqualified from unemployment benefits simply by the fact that he receives or is owed a paycheck in that week, because that money is paid or payable with respect to services performed in a previous week. The majority's "common sense" example, 77 Or App at 151, would be resolved the same way under my interpretation of the statute. The individual who receives pay at the end of week four is unemployed for weeks three and four, because he has performed no services in those weeks and the remuneration is paid with respect to weeks one and two. In addition, contrary to the majority's assertion, I would not *require* claimants to take their vacation pay during the plant shutdown. I only

think that they should not be entitled to receive unemployment benefits during the shutdown when they have the option of receiving pay previously earned. For these reasons, I would reverse and respectfully dissent.