Argued and submitted November 10, 1986, affirmed July 22, reconsideration denied September 25, petition for review denied November 3, 1987 (304 Or 311)

ALEXANDER,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION,
*Respondent.*

(86-AB-267-A; CA A40268)

739 P2d 608

Suanne Lovendahl, Oregon Legal Services Corporation, Roseburg, argued the cause and filed the brief for petitioner.

Michael D. Reynolds, Assistant Attorney General, Salem, waived appearance for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Claimant seeks review of the denial of unemployment benefits on the ground that she was discharged for "misconduct." ORS 657.176(2). She asserts that the Employment Appeals Board misinterpreted applicable administrative rules and neglected to make necessary findings as to certain material facts and that the conclusion that she was discharged for misconduct was not supported by substantial evidence. We affirm.

The referee found:

"(1) Claimant worked as a habilitation coordinator for the employer from September 1982 through October 23, 1985. (2) Claimant was employed on a full-time basis and was paid $5.39 per hour. (3) Claimant's job duties primarily involved helping to train handicapped workers in job skills which would enable them to become productive in the labor market. (4) During the latter part of the claimant's employment, the claimant and a co-worker developed a program in which the employer's handicapped clients were trained to perform janitorial duties at an office building. (5) Workers in the program developed by the claimant and her co-worker were paid a wage which was dependent upon the percentage of the work of a normal worker which the handicapped clients could perform during a given period of time. (6) The wage of each of the claimant's clients was set based upon the evaluation of the claimant and her co-worker as to how effectively each client performed the work. (7) The claimant was away from her work attending a conference from October 16 to October 21, 1985. (8) During the period the claimant was away, a controversy arose because other supervisory personnel who had performed a wage analysis had concluded that the claimant was paying her clients an excessive wage and the program was, therefore, encountering financial difficulties. (9) During the claimant's absence, the program was temporarily halted until the issue regarding the wage analysis could be resolved. (10) When the claimant returned to work, she began the process of resolving the discrepancies in the wage determinations. (11) The claimant and other supervisors set October 28 as target date at which the program would resume and they intended to perform another wage evaluation before that time. (12) On October 23, 1985, the claimant was called to the office of her supervisor and was given a reprimand for not immediately resolving the wage dispute and restarting the program. (13) The claimant's supervisor felt that the wage evaluation of the

other supervisors was the more correct figure regarding what the clients should be paid and the supervisor instructed the claimant and her co-worker to immediately restart the program and implement the lower wage scale which the other supervisors had concluded was appropriate. (14) Although the claimant's co-worker agreed to the change of wage scale, the claimant indicated that she would not follow the supervisor's instructions and that he would have to discharge her because she would not lower the wage scale without running another analysis. (15) Claimant was discharged on October 23 because she refused to implement the wage scale which was lower than that which she believed appropriate. (16) Neither the claimant nor her employer contacted any government agency with jurisdiction over the wage of handicapped workers in order to resolve the dispute regarding the wages."

The referee concluded that claimant had "a legitimate difference of opinion" with her employer but held that her refusal to follow her employer's instructions constituted "misconduct." On *de novo* review, EAB concurred with the referee's holding and added that "claimant's intransigence concerning the implementation of the new rate of pay was continuing insubordination."

ORS 657.176(2) provides that an individual shall be disqualified from receiving unemployment benefits if a discharge results from "misconduct connected with work." "Misconduct" for purposes of this provision is defined in OAR 471-30-038(3) as

"a wilful violation of the standards of behavior which an employer has the right to expect of an employe. An act that amounts to a wilful disregard of an employer's interest, or recurring negligence which demonstrates wrongful intent is misconduct. Isolated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are not misconduct for purposes of denying benefits under ORS 657.176."

An employe's refusal to obey an employer's instructions usually constitutes "misconduct" under this standard. *Pintok v. Employment Division,* 32 Or App 273, 573 P2d 773 (1978); *Margolin v. Employment Div.,* 31 Or App 597, 571 P2d 162 (1977). However, claimant contends that her conduct was

justified, because she believed that her employer's instructions were illegal. Essentially, she argues that the wage analysis completed by other persons was incorrect, because it had not been done properly. It follows, she argues, that the wages paid the handicapped workers would be too low and her employer might be required to pay back wages and penalties in the event of an adverse audit by the relevant federal agency. The referee concluded that the difference of opinion did not justify her refusal to obey the direct order. Implicit in the referee's conclusion, which was adopted by EAB, was that the wage scale was not illegal and that the order of claimant's supervisor was not unreasonable. Although an employe may have an honestly arrived at and earnestly held opinion, the employer's opinion, in the event of a conflict, must prevail.

■ Alternatively, claimant asserts that the Board erred by failing to make specific findings regarding the legality of the executive director's order. Claimant cites ORS 183.470(2) which requires that findings accompanying agency orders shall "consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order." Claimant did not directly raise that issue before the referee and raised it only indirectly to EAB before issuance of its first order. Claimant moved for reconsideration and enclosed, as an exhibit to her motion, a copy of the federal Wage and Hour Division's compliance report. The report was of an investigation of employer and included a response to claimant's specific complaint regarding the wage study she was ordered to implement.[1]

Other than claimant's allegations and her opinion that her wage study was correct and that the wage study ultimately implemented was not, there is nothing in the record to show that the order was wrong, much less illegal. The report from the Wage and Hour Division did not show it. EAB did not need to decide whether the wage paid the handicapped

---

[1] The report was not conclusive regarding the legality of the wages that claimant was ordered to approve. It said:

"There were also allegations of improper time studies conducted for Custodial Workers. See Ex. B-1 and B-5 and a letter dated 10/29/85 from Judy Alexander to Cassie Maloney (in file). I believe that these allegations were effectively answered and disputed by Craig LaFleur, Custodial Supervisor."

workers was illegal. Remand for a determination of that issue would serve no purpose.

■ In her final assignment of error, claimant asserts that EAB's conclusion that she was dismissed because of "misconduct" was not supported by substantial evidence. There was substantial evidence to support the facts found and substantial reasoning from the facts to the ultimate conclusion.

Affirmed.