Argued and submitted June 15, reversed and remanded for reconsideration
September 2, 1987

GLIDE LUMBER PRODUCTS CO.,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(86-AB-1319; CA A41933)

741 P2d 904

Galen L. Bland, Portland, argued the cause and filed the brief for petitioner.

Christine Chute, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Martin J. McKeown, Eugene, waived appearance for respondent Robert A. Coats.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Employer petitions for review of EAB's order allowing unemployment benefits to claimant. The referee found, in a decision which EAB adopted, that claimant voluntarily quit his job rather than submit to a drug test which employer required as part of a general policy proscribing the use of controlled substances by employes. The factual background is essentially identical to that in *Glide Lumber Prod. Co. v. Emp. Div. (Smith)*, 86 Or App 669, 741 P2d 907 (1987). We held there that the claimant's off-duty drug use, which resulted in his discharge after it was detected in a random drug test, was not misconduct connected with his work and therefore did not disqualify him from receiving unemployment benefits under ORS 657.176(2)(a). Claimant here was not discharged, but quit voluntarily. Accordingly, his entitlement to benefits depends on whether he "[v]oluntarily left work without good cause," ORS 657.176(2)(c),[1] rather than on the "misconduct connected with work" test which applied in *Smith*.

In its principal assignment, employer challenges the referee's and EAB's conclusion that there was good cause for claimant to leave work. The referee explained that conclusion:

"OAR 471-30-038(4) states that 'good cause' for voluntarily leaving work is:

" '[S]uch that a reasonable and prudent person of normal sensitivity, exercising ordinary common sense, would leave work. The reason must be of such gravity that the individual has no reasonable alternative but to leave work.'

"Claimant chose to leave work rather than take the test. The test was designed to detect the use of controlled substances. It was randomly given. There was no requirement that there be a reasonable belief that the worker was impaired, that the worker was involved in an accident or safety violation, or that there be other indicia of drug use affecting the worker's ability to safely perform his job. Employer's evidence was not sufficient to establish that the test results would have established a

---

[1] Employer and the Employment Division dispute whether claimant's refusal to take the test constituted misconduct connected with work, as well as whether there was good cause for claimant to leave work. Given the referee's finding, only the latter issue is relevant at this stage of the proceedings.

lingering effect or impairment that would have affected claimant's work performance. There was no work related objectively demonstrable reason for conducting the test. Thus, the policy requiring submission to such test was not reasonable. Claimant had good cause to refuse the test and to leave work when submission to the test was a condition of continuing employment."

■ ■ We do not think that the referee's analysis fully resolves the good cause issue.[2] The essence of that analysis is that the unreasonableness of employer's policy *ipso facto* gave claimant good cause for quitting rather than complying with it. However, the standard for determining whether an employe's voluntary departure from work was for "good cause" is not whether he left rather than comply with an unreasonable job requirement, but whether the employe's reason for voluntarily leaving was "of such gravity" that he "ha[d] no reasonable alternative but to leave work." OAR 471-30-038(4); *see Hertel v. Employment Division,* 80 Or App 784, 724 P2d 338, *rev den* 302 Or 456, 730 P2d 35 (1986). The two questions are not necessarily unrelated, but a *per se* affirmative answer to the second will seldom automatically follow from a positive answer to the first. A clear example of the rare situation in which the first question does answer the second would be when an employer's unreasonable requirement is that the employe commit a crime. *But see Alexander v. Employment Division,* 86 Or App 400, 739 P2d 608 (1987). Conversely, and more typically, there are without doubt many job requirements that are totally senseless but which fall well short of the point that the prospect of complying with them leaves an employe no reasonable alternative but to quit.

For that reason, we cannot accept the postulate, on

---

[2] Indeed, his reasoning appears to be more pertinent to determining whether a refusal to take the test, or a positive test result, would constitute misconduct connected with work. *See Glide Lumber Prod. Co. v. Emp. Div. (Smith), supra.* The Employment Division suggests that the "misconduct" and "good cause" tests should be treated as analogous. It explains:

"The employe's refusal to take the test should be treated no differently than taking and failing the test because the test would not have provided evidence sufficient to disqualify the employe from receiving benefits. Even if the employe had taken and failed the urinalysis, the information obtained would not have been sufficient to constitute 'misconduct.' "

We are unable to agree that the separate statutory tests can be so applied. Claimant *did* voluntarily quit, and the misconduct question is not relevant.

which the referee and EAB based their conclusion, that *any* unreasonable employment rule affords good cause for a voluntary termination. The referee offered no explanation why *this* rule, under these facts or generally, would lead a "reasonable and prudent person of normal sensitivity, exercising ordinary common sense," OAR 471-30-038(4), to conclude that his only reasonable option was to quit rather than comply. The Division, in its brief here, attempts to supply that explanation by quoting *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979):

> "The law does not extend its benefits to a worker who has a job and voluntarily gives it up without 'good cause.' But it also does not impose upon the employee the one-dimensional motivation of Adam Smith's 'economic man.' The workplace is the setting of much of the worker's daily life. The statute does not demand as a matter of law that he or she sacrifice all other than economic objectives and, for instance, endure racial, ethnic, or sexual slurs or personal abuse, for fear that abandoning an oppressive situation will disqualify the worker from unemployment benefits. *Cf., e.g., Taylor v. Unemp. Comp. Bd. of Review,* 474 Pa 351, 378 A2d 829 (1977). How far 'good cause' encompasses such non-economic values also is left to the agency in the first instance." 285 Or at 556-57.

There are two interrelated problems with the Division's reliance on *McPherson* in its argument to us. First, it presupposes, rather than demonstrates, equivalency between the types of on-the-job abuse which the Supreme Court described there and the burden on employes contemplated by employer's rule here. Second, it is for the referee and EAB, rather than us, to decide initially and, to explain their conclusion, whether the drug testing requirement is one which left claimant with no reasonable alternative except ending his employment. That determination may depend on specific facts which the agency has yet to find, as well as its interpretation of the relevant statute and rule. *Compare Londahl v. Employment Division,* 72 Or App 366, 695 P2d 1388 (1985).

The referee made no finding about *why* claimant quit rather than submit to the test. The record discloses at least four possibilities: there was conflicting evidence as to whether claimant had used drugs; there was evidence that he was simply indifferent to employer's demand and even tried unsuccessfully to submit a testable specimen; at one point, he was

told that the testing process would require a $25 payment by him; and, on one or more occasions, he indicated that he considered the testing requirement to violate his constitutional rights. The appropriate legal analysis may vary, depending on the reason why claimant quit and, possibly, on other facts as well.[3]

In sum, the principal basis for the referee's and EAB's decision was their equation of the declared unreasonableness of employer's policy with good cause for claimant's choosing to leave work rather than comply with the policy. There are missing factors in that equation, which are for the agency to identify—or not identify—on remand.

The referee also stated that "submission to the test was a condition of continuing employment." As we noted in *Glide Lumber Prod. Co. v. Emp. Div. (Smith), supra,* employer's rule makes non-compliance with the testing requirement a basis for discharge. It is not clear from the language of the rule whether an employe's refusal to take the test results in *automatic* termination. If the referee's statement was intended as a finding that, having refused to submit, claimant's only choices were to quit or be fired and "reasonable alternatives to quitting would have been 'fruitless,' " *Ferguson v. Employment Division,* 68 Or App 849, 854, 683 P2d 147 (1984), that statement, like the referee's other reasons for concluding that there was good cause, rests on the unexplained supposition that taking the test was not itself a reasonable alternative. If the statement was meant to imply that claimant's termination of his employment was equivalent in substance to a discharge, *see Publishers Paper Co. v. Morgan,* 10 Or App 94, 498 P2d 798, *rev den* (1972), the implication is at variance with the referee's present finding that claimant quit voluntarily.

---

[3] Claimant waived appearance in this court, and no constitutional argument has been made to us by any of the parties. There is also no discussion by the parties of privacy and related concepts, independent of any constitutional context. It is of course possible that some arguments that might be made for the proposition that the drug testing policy gives rise to good cause to quit would not turn on factual variables.

Reversed and remanded for reconsideration.[4]

---

[4] Employer also contends that "the agency erred in deciding this case on an ad hoc basis without properly adopting a rule." We rejected employer's similar argument in *Glide Lumber Prod. Co. v. Emp. Div. (Smith), supra,* and we reject its argument here for the same reasons.