**Phillip STREITZ, Claimant–Appellant,**

v.

**Gordon JUNEAU and Division
of Employment Security,
Respondents.**

**No. 21127.**

Missouri Court of Appeals,
Southern District,
Division One.

March 17, 1997.

Sidney T. Pearson, III, Meramec Area Legal Aid Corporation, Rolla, for Claimant–Appellant.

Gordon Juneau, Rolla, pro se.

Ninion S. Riley, Cynthia Quetsch, Jefferson City, for Div. of Employment Sec.

PREWITT, Judge.

Claimant sought unemployment benefits under the Missouri Employment Security Law, Chapter 288, RSMo 1994. The Labor and Industrial Relations Commission, adopting "the decision of the Appeals Tribunal as a decision of the Commission" denied the claim. A Deputy of the Missouri Division of Employment Security had initially determined that Claimant was entitled to benefits. The Deputy found that Claimant quit because he was reprimanded in an abusive manner, concluding, "Claimant has a right to expect that reprimands be given in a civil manner."

The Appeals Tribunal of the Division of Employment Security reversed the Deputy's determination. Its findings of fact stated:

The claimant worked for the employer about one year. His work required that he help in the kitchen. The claimant worked from 10 to 25 hours per week.

Throughout the claimant's employment the employer shouted at the claimant and other employees and called them demeaning names. At the time of one such event on April 4, 1996, the claimant reported to his employer that he was ill and needed to go home. He was allowed to do so and was told to call on April 8, 1996, about returning to work.

On April 4 or 5, 1996, the claimant reported to the Division's local office and filed an initial claim for unemployment benefits. On April 8, 1996, he called his employer and reported that he would not be returning to work. The claimant quit his job because of the employer's shouting and comments about him.

For its conclusions of law, the Appeals Tribunal determined:

It is concluded that the claimant quit his job the last day he worked, April 4, 1996. He quit his job because of the employer's shouting and comments about him. The employer's practice had continued throughout the claimant's one year of em-

ployment with the employer. The conditions of the claimant's work had not changed so significantly by April 4, 1996, that they provided him with good cause to quit at that time, particularly since he would have had ample opportunity to seek other employment. Therefore, it is concluded that the claimant left his work voluntarily on April 4, 1996, without good cause attributable to his work or to his employer.

Review is under Section 288.210, RSMo 1994. Under that section, appellate review in unemployment compensation cases is limited to whether the Commission's decision is supported by competent substantial evidence and authorized by law. *Bartsch v. Moore,* 931 S.W.2d 877, 878 (Mo.App.1996). The evidence is viewed in the light most favorable to the finding of the Commission and all reasonable inferences drawn therefrom which support the decision. *Id.*

Claimant presents one point relied on, contending that "abusive behavior by employer that would be unacceptable to a person of reasonable sensitivity is sufficient good cause to refuse to work further for the employer for purposes of the statute." The statute referred to is Section 288.050, subd. 1(1), RSMo 1994, which disqualifies a claimant who has "left his work voluntarily without good cause attributable to his work or to his employer."

Respondent Division presents two points. It initially states that Claimant "quit his job without good cause … in that there was competent evidence to find that [Claimant] quit because he wanted to draw unemployment benefits." This contention is, of course, contrary to both the findings of fact and conclusions of law of the Appeals Tribunal, which were adopted by the Commission. For that reason it is rejected.

For its second point, the Division contends that the Claimant quit his job without good cause because:

A: The employer's language would not have caused a reasonable man to have quit

in that, in light of the type of job and Appellant's misconduct, such language is not uncommon; and

B: Appellant's actions did not reflect "good faith" in that Appellant did not attempt to resolve the problem with the employer prior to quitting.

Respondent Juneau contends that the Commission's findings were correct, "in that Appellant quit without good cause attributable to his work or to his employer because the conditions of Appellant's work had not changed significantly over Appellant's one-year term of employment." It is undisputed that Claimant quit his employment. The question thus is whether he did so "without good cause."

Claimant worked for Respondent Juneau in a restaurant as a "salad maker." Claimant testified that Juneau had called him a "grease drawer idiot," "dummy," "stupid," "idiot," and "nigger." On Claimant's last day at work he was written a message by employer on his time card that said, "forgotten lettuce, idiot." Claimant also testified that on that day Juneau told him that he would "work like a nigger only a few hours or something."[1]

Respondent Juneau testified before the Appeals Tribunal and did not deny that he said the things Claimant attributed to him. The Appeals Tribunal necessarily had to believe most, if not all, of what Claimant said, due to its finding that he was called "demeaning names" and that he quit his job "because of the employer's shouting and comments about him." As we interpret the Appeals Tribunal ruling, as adopted by the Commission, it concluded that because the employer's practice of calling him names had continued throughout his employment, there was not good cause to quit on April 4, 1996. Apparently they concluded that an isolated incident might be good cause for quitting, but not long and continued verbal abuse.

---

1. Both Respondents say in the statement of facts in their brief that Claimant is "Caucasian." Respondent Juneau does not cite any place in the record reflecting that. Respondent Division cites to Claimant's "initial claim" in the legal file, but

we find nothing there to support that statement. It could be inferred from Respondents' emphasis that it is less offensive or even not offensive for certain racial slurs to be used if you are not of the race generally referred to by such a slur.

Good cause has been interpreted by Missouri courts, such as in *Hessler v. Labor & Indus. Relations Comm'n*, 851 S.W.2d 516, 518 (Mo. banc 1993)(quoting *Belle State Bank v. Industrial Comm'n*, 547 S.W.2d 841, 846 (Mo.App.1977)), as being:

[C]ause that would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment.... [Good cause] is positive conduct which is consistent with a genuine desire to work and be self-supporting.... [T]he circumstances motivating an employee to voluntarily terminate employment must be real, not imaginary, substantial,not trifling, and reasonable, not whimsical, and good faith is an essential element.

■ The term "good cause" has no fixed meaning, but depends upon the circumstances of each case. *Mitchell v. Div. of Employment Sec.*, 922 S.W.2d 425, 427 (Mo. App.1996). Good cause is determined by an average reasonable person standard, not by the supersensitive. *Wingo v. Pediatric & Adolescent Med. Consultants, Inc.*, 932 S.W.2d 898, 899 (Mo.App.1996). Whether favorable evidence establishes good cause is a question of law and this Court is not bound by the findings of the Commission. *Charles v. Mo. Div. of Employment Sec.*, 750 S.W.2d 658, 661 (Mo.App.1988); *Backer's Potato Chip Co. v. Labor & Indus. Relations Comm'n*, 679 S.W.2d 909, 911 (Mo.App.1984).

■ As noted above, good faith is an element of good cause. *Heavy Duty Trux v. Labor & Indus. Relations Comm'n*, 880 S.W.2d 637, 641 (Mo.App.1994). To establish good faith the employee must show an effort was made to resolve the dispute before resorting to the drastic remedy of quitting his or her job. *Id.* Here, the employer was the one constantly making the verbal statements so that the employee had no one else to consult. It was undisputed that he did ask the employer to quit the abuse, apparently to no avail.

This District has previously held that it is "misconduct" under Section 288.050, subd. 2, RSMo 1994, for an employee to call the president of his employer a "red-headed cock sucker," *Simpson Sheet Metal, Inc. v. Labor*

*& Indus. Relations Comm'n*, 901 S.W.2d 312, 315 (Mo.App.1995), or the employee's supervisor a "motherfucker," *Acord v. Labor & Indus. Relations Comm'n*, 607 S.W.2d 174 (Mo.App.1980). It is difficult to believe that the legislature could have intended that offensive name-calling is acceptable for an employer while justification for firing if done by an employee.

■ An employee should not have to endure verbal abuse as a condition of employment, nor should such an employee have to forfeit unemployment compensation benefits upon deciding to sever ties with an employer for that reason. *Dempsey v. Old Dominion Freight Lines*, 645 So.2d 538, 539 (Fla.App. 1994); *Londahl v. Employment Div.*, 72 Or. App. 366, 695 P.2d 1388, 1390 (1985). *See* J.O. Pearson, Jr., Annotation, *Unemployment Compensation: Harassment or Other Mistreatment by Employer or Supervisor as "Good Cause" Justifying Abandonment of Employment*, 76 A.L.R.3d 1089 (1977). *See also St. John's Reg'l Med. Ctr. v. Labor & Indus. Relations Comm'n*, 814 S.W.2d 698 (Mo.App.1991)(derogatory statement made in employee's absence not good cause to quit); *Backer's Potato Chip Co.*, 679 S.W.2d at 912–13 (use of profanity in talking to employee, but not calling an employee an "obscene name" not good cause to quit).

■ A claimant is not required to continue to be subjected to abusive conduct and profane language. *Electrical Reactance Corp. v. Unemployment Compensation Bd. of Review*, 169 Pa.Super. 269, 82 A.2d 277, 278 (1951). That objectionable conditions had existed for a long period of time and that the last occurrence was merely a culmination of conduct does not prevent there being good cause to voluntarily quit. *Id. See Smith v. Labor & Indus. Relations Comm'n*, 656 S.W.2d 812, 817 (Mo.App.1983)("treatment of an employee by his employer or supervisor may be so arbitrary and unacceptable to a person of ordinary reasonable sensitivity as to afford justification for the employee to quit the employment.").

■ The Commission found that Claimant quit his job because of the employer's

shouting and comments about him. The comments and conduct of the employer created good cause for the employee to voluntarily leave his work. It is no defense that the employer's practice had continued throughout claimant's employment. A person might stay at work hoping it would stop but when it does not, may no longer be able to continue. The language used was such that no person should have to endure it at work. The Commission's determination is an error of law.

The Commission's order affirming and adopting the Appeals Tribunal's decision is reversed. The cause is remanded to the Commission to enter an order finding Claimant not disqualified from benefits, as he quit with good cause attributable to his work or employer.

BARNEY, P.J., and GARRISON, J., concur.