**SPRINGFIELD GROCER COMPANY, INC., Appellant,**

v.

**Sherrie SARTIN and Division of Employment Security, Respondents.**

No. 24099.

Missouri Court of Appeals, Southern District, Division Two.

July 17, 2001.

**818**

Jay M. Dade, King & Dade, Springfield, MO, for Appellant.

No brief filed by Respondents.

PREWITT, Judge.

Springfield Grocer Company, Inc. appeals from a decision of the Labor and Industrial Relations Commission reversing the decision of the Division of Employment Security Appeals Tribunal which affirmed a Division Deputy's determination that claimant Sherrie Sartin was disqualified from receiving benefits because she left work voluntarily without good cause attributable to her work or employer. Appellant claims that the facts found by the Commission do not support its award and there was no sufficient competent evidence in the record to warrant the making of the award.

Sherrie Sartin ("Claimant") terminated her employment with Springfield Grocer Company, Inc. ("Appellant") on July 14, 2000, and subsequently filed for unemployment compensation with the Missouri Division of Employment Security. Claimant had worked for Appellant from February 1999 through September 1999 in a night shift position, quit to take day employment elsewhere, and began working for Appellant again in January 2000, in a day position, that she remained at until her resignation. She acknowledged that her supervisor during both periods of employment with Appellant used foul language and made threatening comments to her.

A "Deputy's Determination Concerning Claim for Benefits" that the claimant was disqualified from receiving benefits "because the claimant left work with the above employer voluntarily without good cause attributable to her work or employer" was filed on August 8, 2000. The Deputy's Determination stated that "[t]he claimant quit because she believed she was subjected to verbal harassment by her supervisor. The claimant had not been harassed by her supervisor."

Sartin filed her Notice of Appeal to Appeals Tribunal with the Division of Employment Security on August 16, 2000. She contended that her male supervisor threatened her, cursed at her, and made inappropriate "personal comments ... about her body," and that she therefore had good cause for terminating her em-

ployment. The Appeals Tribunal heard the appeal on September 18, 2000, and testimony was heard from Claimant, her husband, a former co-worker of claimant, and the director of operations for Springfield Grocer Company. Claimant's husband also acted as Claimant's agent at the hearing.

The Appeals Tribunal related in its findings of facts that in addition to the foul language and threatening remarks made by Claimant's supervisor, Claimant was also subjected to harassment by the supervisor's wife, who called Claimant at home and accused her of having an affair with the supervisor, and who stared and glared at her when visiting the workplace and at a bowling alley where claimant, her husband, the supervisor, and his wife all bowled. Nonetheless, the Appeals Tribunal affirmed the Deputy's Determination, finding that "[u]nder the circumstances [that claimant voluntarily subjected herself to the supervisor's wife's company by continuing to bowl in the same league as her], even though the supervisor's language was appalling, it has not been demonstrated either that the supervisor's language compelled the claimant to quit work or that the claimant's discomfort with her supervisor's wife gave her good cause for quitting work" and that, therefore, "claimant's voluntary separation from work ... was not with good cause attributable to her work or her employer."

Claimant timely filed her Application for Review with the Labor and Industrial Relations Commission ("Commission") on October 10, 2000. Claimant contended in her Application that she did complain about her supervisor's foul language to the director of operations and that she had quit bowling as a result of the supervisor's wife's conduct. Claimant stated that she overlooked the supervisor's short temper, foul language, and threatening comments during her first period of employment because she needed the job and had been unable to find daytime employment. She noted that the harassment by supervisor's wife, who called her at home and accused her of having an affair with the supervisor and who stood in front of an interior office window by claimant's desk and stared at her, began shortly into her second period of employment. A few months later, after the supervisor made comments about being able to "take the 'wide load' sign off of [Claimant's] ass" (referring to Claimant's recent weight loss) in front of another manager who had complemented an outfit she was wearing, Claimant reported "everything" to the director of operations, who addressed the matter with the supervisor. The harassment continued, and Claimant subsequently notified Appellant's director of operations of her intent to quit. He offered to let her work for him instead of the supervisor, but she turned his offer down, stating that she already promised her daughter she would quit and be a full-time Mom and so she felt obligated to resign. The director of operations testified at the hearing before the Appeals Tribunal that "[p]roximity wise I didn't have a position where I could keep her away from [the supervisor]" but that "[t]he one thing I could keep her from doing is having her be [subject to] his direct report, she could have reported to me instead."

In a decision filed January 24, 2001, the Commission reversed the decision of the Appeals Tribunal which had affirmed the Deputy's Decision to deny benefits. Citing *Producers Produce Co. v. Indus. Comm'n,* 365 Mo. 996, 291 S.W.2d 166, 173 (1956), *Clark v. Labor and Indus. Relations Comm'n,* 875 S.W.2d 624, 627 (Mo.App. 1994), and other cases, the Commission found that Claimant terminated her employment with good cause. The Commission stated:

In this case, claimant quit her job because her supervisor was constantly using vulgar, profane, and insulting language towards her. It is true that claimant endured, without complaint, the abusive behavior during her first period of employment with the employer. However, by declining to complain about her supervisor's behavior during her first period of employment, claimant did not waive any objections she had to the behavior during her second period of employment. In fact, the supervisor's behavior was as deplorable during the second period of employment as during the first. When the abusive and threatening behavior spread from the supervisor to the supervisor's wife, claimant decided she could no longer tolerate the abuse. Claimant was not required to continue to be subjected to the abusive and profane language of her supervisor. The supervisor's profane and abusive behavior would cause an average person of ordinary reasonable sensitivity to quit her employment. Claimant has met her burden of showing good cause to quit her job.

The Commission's decision was signed by John P. Madigan, Jr., Chairman, and Matthew W. O'Neill, Member. A dissenting opinion was filed by Christian C.R. Wrigley, a member of the Commission, which stated that "[i]f claimant truly objected to the supervisor's behavior, she never would have accepted employment the second time."

Springfield Grocer Company, Inc. timely filed its Notice of Appeal with this court on February 6, 2001. *See* § 288.210, RSMo 2001 (appeal from Commission decision is made to court of appeals). No respondents' briefs were filed.

Our review of the Commission's decision is limited to questions of law. § 288.210, RSMo. We accept the Commission's findings of facts as conclusive so long as they are "supported by competent and substantial evidence" in the absence of fraud. *Id.* We are not to modify, reverse, remand for rehearing, or set aside the decision of the Commission unless we find "[t]hat the commission acted without or in excess of its powers; ... [t]hat the decision was procured by fraud; ... [t]hat the facts found by the commission do not support the award; or ... [t]hat there was no sufficient competent evidence in the record to warrant the making of the award." *Id.*

■ Missouri Revised Statute § 288.050.1(1) provides that a claimant shall be disqualified for benefits if it is found that "the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer." Whether a worker's voluntary termination of employment was made with good cause is a question of law. *Clark*, 875 S.W.2d at 627.

■ A worker's decision to voluntarily terminate his or her employment must be made in good faith. *Id.* Good faith is absent if the worker's decision to terminate employment was not supported by good cause or if the employee failed to make any effort to resolve the dispute before quitting. *See id.* Whether a worker terminated his or her employment with good cause is determined by a standard of reason applied to the average person, not to the supersensitive. *Id.* For the purposes of determining eligibility for unemployment benefits, the term "good cause" "has no fixed or precise meaning, and is judged by the facts of each case." *Bunch v. Div. of Employment Sec.*, 965 S.W.2d 874, 877 (Mo.App.1998). It "has been interpreted as meaning 'cause that would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment.'" *Id.* at 878.

Appellant claims in its one point relied on that the Commission's award was not supported by the facts found by the Commission nor warranted by sufficient competent evidence as Claimant failed to provide Appellant an "appropriate opportunity" to resolve the harassment she contended was the reason for her resignation. Thus, Appellant argues that Claimant voluntarily left her employment without good cause attributable to her employer.

As noted above, the Commission found that "claimant quit her job because her supervisor was constantly using vulgar, profane, and insulting language towards her." Such working conditions would be objectionable to the average person. "An employee should not have to endure verbal abuse as a condition of employment, nor should an employee have to forfeit unemployment compensation benefits upon deciding to sever ties with an employer for that reason." *Streitz v. Juneau*, 940 S.W.2d 548, 551 (Mo.App.1997). That the abuse had been occurring for a long period of time prior to Claimant's resignation "and that the last occurrence was merely a culmination of conduct does not prevent there being good cause to voluntarily quit." *Id.*

Claimant notified the director of operations that she was being verbally abused and harassed by her supervisor and his wife and that she wanted to quit. She stayed for a period of time after giving such notice to permit Appellant to find a replacement. Although the director of operations offered to permit Claimant to report to him instead of the supervisor, such accommodation was not an adequate resolution of Claimant's dispute, as she would still be working in close physical proximity to the supervisor who harassed and verbally abused her. Claimant was not required to accept the director's offer.

We find that Claimant's decision to terminate her employment was made in good faith, supported by good cause attributable to her employer. Appellant's point is denied.

The decision of the Labor and Industrial Relations Commission is affirmed.

PARRISH, J., and GARRISON, J., concur.