Karen L. (Besaw) RYAN,
Claimant–Appellant,

v.

MOTOR TECHNOLOGIES GROUP,
Employer–Respondent,

and

Division of Employment Security,
Respondent.

No. 26936.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 30, 2005.

---

Mark E. Rector, Allen & Rector, Lebanon, for appellant.

Larry R. Ruhmann, St. Louis, for respondent.

PHILLIP R. GARRISON, Judge.

Karen L. (Besaw) Ryan, ("Claimant") appeals a decision of the Labor and Industrial Relations Commission ("Commission") denying her claim for unemployment compensation benefits under Section 288.050.[1] We affirm.

Claimant worked for Motor Technologies Group ("Employer") for approximately eight months performing fabrication work. The dispute began on August 17, 2004, when Claimant received four notices of disciplinary action, which were dated

1. All references to statutes are to RSMo (2004) unless otherwise indicated.

August 16, 2004. The first notice stated that on August 13, 2004, at approximately 6:30 p.m., Claimant left her work station and was getting candy and soda in the cafeteria. The second notice said that Claimant, on August 13, 2004, left her work station without notifying her supervisor and went to the front office to inquire about paychecks. The third notice recited that on August 13, 2004, Claimant was spreading rumors, upsetting other employees, and disrupting work. The fourth notice stated that Claimant was "going from one employee to another on working hours upsetting them telling them about paychecks," on August 13, 2004. All four notices were signed by Larry Bean ("Bean"), Claimant's supervisor.

When Bean presented Claimant with the four notices on August 17, 2004, she became upset because she believed that they were in retaliation for a previous complaint she had made to the human resource manager about William Brosnick ("Brosnick"), Bean's supervisor. Claimant walked off the job with the belief that, according to the Employer's policy manual, an employee is discharged after being written up three times.

Claimant filed a claim for unemployment compensation benefits with the Missouri Division of Employment Security, which was denied on September 24, 2004, because the Deputy determined that she left her employment voluntarily without good cause attributable to her work or employer. On September 29, 2004, she appealed to the Appeals Tribunal, which, after a hearing via telephone conference on October 19, 2004, reversed the Deputy's ruling, stating that "[C]laimant is not disqualified for benefits because of her voluntary separation from work on August 17, 2004."

On November 3, 2004, Employer filed an application for review with the Commission. The Commission issued its findings of fact and conclusions of law reversing the decision of the Appeals Tribunal, finding that Claimant was disqualified for benefits until she had earned wages for insured work after August 17, 2004, equal to ten times her weekly benefit amount because she "left work voluntarily on that date without good cause attributable to her work or employer." Claimant appeals this decision.

■ In her sole point, Claimant argues that the Commission erred in denying her unemployment benefits. She argues that she left work voluntarily, for good cause in that she endured a course of abusive and retaliatory conduct by her supervisor during the term of her employment, and acted with good faith to prevent the termination of that employment. We disagree.

■ Claimant's assertion is based on the sufficiency of the evidence, and as such the scope of our review under Article V, § 18, of the Missouri Constitution and Section 288.210 are limited to whether the Commission's decision was "supported by competent and substantial evidence upon the whole record." *Coyne v. Cargill, Inc.,* 167 S.W.3d 800, 801 (Mo.App. S.D.2005) *(quoting CNW Foods, Inc. v. Davidson,* 141 S.W.3d 100, 102 (Mo.App. S.D.2004)). Section 288.210 states, in pertinent part, that

> [u]pon appeal no additional evidence shall be heard. The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law.

In reviewing the Commission's order for competent and substantial evidence, we must defer to the Commission's determinations as to the credibility of witnesses and the resolution of conflicting evidence.

*Taylor v. Div. of Employment Sec.,* 153 S.W.3d 878, 881 (Mo.App. S.D.2005); *CNW Foods, Inc.,* 141 S.W.3d at 102–03; *Shelby v. Hayward Baker, Inc.,* 128 S.W.3d 164, 166 (Mo.App. S.D.2004). However, we are not bound by the Commission's conclusions of law or its application of law to facts and we review questions of law independently. *Taylor,* 153 S.W.3d at 881; *see also Shelby,* 128 S.W.3d at 165–66.

 Under Section 288.050.1(1) a claimant is disqualified for unemployment compensation if "[t]he claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer." Good cause is limited to those situations in which Claimant has resigned her position as a result of "external pressures so compelling that a reasonably prudent person would be justified in giving up employment." *Citizens Bank of Shelbyville v. Indus. Comm'n,* 428 S.W.2d 895, 899 (Mo.App.St.L.Dist.1968). Good cause includes an element of good faith. *Clark v. Labor and Indus. Relations Comm'n,* 875 S.W.2d 624, 627 (Mo.App. W.D.1994). "A worker has good cause to terminate employment voluntarily when that conduct conforms to what an average person, who acts with reasonableness and in good faith, would do." *Id.* In order to establish good faith, a claimant must prove that an effort was made to "resolve the dispute before resorting to the drastic remedy of quitting [her] job." *Id.* (quoting *Tin Man Enter., Inc. v. Labor & Indus. Relations Comm'n,* 866 S.W.2d 147, 149 (Mo.App. E.D.1993)). Whether an employee has voluntarily left her employment with good cause is a question of law. *Springfield Grocer Co., Inc. v. Sartin,* 49 S.W.3d 817, 820 (Mo.App. S.D. 2001).

In this case the evidence clearly supports the Commission's decision. Claimant argues that she left work for good cause on August 17, 2004, after receiving four notices of disciplinary action. Claimant concedes that the events surrounding the August 16, 2004, notices, including Brosnick's use of vulgar language toward her on August 13, 2004, do not alone constitute good cause. Rather, she asserts that the verbal abuse she allegedly suffered by Brosnick prior to August 13, 2004, in conjunction with the events surrounding the notices, gave her good cause to sever ties with Employer. However, Claimant has not provided any specific evidence of verbal abuse prior to August 13, 2004, which would support such a finding.

The record reveals that prior to the events of August 13, 2004, Claimant lodged "two or three" complaints against Brosnick with the human resources manager the first of which occurred sometime in mid-December 2003 in which she claimed that Brosnick had "cussed [her] out." In addition Claimant testified that she felt as though Brosnick was always "watching" and "picking on her." The evidence is non-specific about these events but apparently constitutes the "abusive and retaliatory behavior" by Brosnick that she argues she had to endure "during most of her employment with [Employer]." There simply is not enough evidence in the record for us to find that these events which occurred prior to August 13, 2004, in combination with the events of August 13, 2004, constituted good cause for Claimant to quit her job.

 The Claimant has "the burden of proving that [her] voluntary termination resulted from good cause attributable to [her] work or employer." *Winco Mfg., Inc. v. Partee,* 141 S.W.3d 34, 38 (Mo.App. E.D.2004). Claimant correctly cites *Springfield Grocer Co., Inc.,* 49 S.W.3d at 821, for the proposition that an employee should not have to endure verbal abuse from her employer and that she is not disqualified from unemployment benefits

for quitting under those circumstances. However, in that case witnesses for the employer conceded that claimant had endured verbal abuse by her supervisor. *Id.* at 819. There was also substantial evidence in the record that the abuse occurred over a period of time. *Id.* at 818–820. The Commission found that "claimant quit her job because her supervisor was constantly using vulgar, profane, and insulting language towards her." *Id.* at 821.

This case is distinct because here the evidence simply reveals that Claimant felt that Brosnick was "watching her ... [and] she felt kind of like he was picking on her." As stated above, there was some evidence that on two occasions Brosnick had also used "vulgar" language toward Claimant. However, based upon the record before us we cannot say that Claimant has met her burden of showing good cause. Other than the circumstances surrounding the four notices of August 16, 2004, there is simply a lack of detail as to specific incidents. The record does not reveal anything that took place between Brosnick and Claimant prior to August 13, 2004, which would rise to the level that would "motivate the average able-bodied and qualified worker in a similar situation to terminate [her] employment." *Winco Mfg., Inc.*, 141 S.W.3d at 38 (quoting *Hessler v. Labor & Indus. Relations Comm'n*, 851 S.W.2d 516, 518 (Mo. banc 1993)).

Claimant also argues that verbal abuse in conjunction with false accusations of wrongdoing can constitute good cause. Even assuming that is true, in this case she did not act in good faith to remedy the conflict that arose between her and Brosnick on August 13, 2004. As stated above, she simply walked off the job. Therefore, based upon the whole record, we cannot say that the Commission's decision to deny Claimant unemployment benefits was erroneous. Accordingly, the Commission's judgment is affirmed.

SHRUM, P.J., and BARNEY, J., concur.