James SARTORI, Appellant,

v.

KOHNER PROPERTIES, INC., and Division of Employment Security, Respondents.

No. ED 91307.

Missouri Court of Appeals, Eastern District, Division Two.

March 10, 2009.

John J. Ammann, St. Louis, MO, for Appellant.

Shelly A. Kintzel, Jefferson City, Kevin J. Lorenz, St. Louis, MO, for Respondent.

## OPINION

GEORGE W. DRAPER III, Judge.

James Sartori (hereinafter "Claimant") appeals from the decision of the Labor and Industrial Relations Commission (hereinafter, "the Commission") finding he voluntarily left his employment without good cause and disqualifying him from receiving unemployment benefits. Claimant raises two issues on appeal. First, Claimant argues the Commission erred in denying him benefits in that he met his burden of proving he did not leave work voluntarily, but rather, was discharged per Kohner Properties, Inc.'s (hereinafter, "Employer") previously stated intent to terminate him. Second, Claimant argues the Commission failed to consider all material evidence as submitted pursuant to Section 288.200.1 RSMo (2000).[1] We affirm.

Employer hired Claimant to perform janitorial and groundskeeping tasks in June 2006. Employer evaluated Claimant's work performance in June 2007. Claimant testified he was told at the June evaluation meeting that he was not going to get a raise, and if his work performance did not improve, he would be terminated. Claimant was later suspended from work on June 28, 2007, but returned to work on July 2, 2007.

Subsequently, Jan Briley (hereinafter, "Briley") and Carol Brown (hereinafter, "Brown"), property managers with Employer, called Claimant into a meeting on August 16, 2007. The parties dispute what occurred at this meeting. Claimant acknowledged this was the follow up review after he had received the poor evaluation in June. At the August 16th hearing, Claimant stated Brown told him she saw no improvement in his work and she was going to recommend "that we stick with the same policy which said you would be terminated." Brown told him to clock out, and Claimant turned in his keys. Claimant stated he believed he was being fired.

Briley and Brown give a different recitation of what occurred at the August 16th meeting. Brown told Claimant that since there had been no improvement in his performance since the June evaluation, he would not get an increase in pay. Claimant told Briley he did not like what she said and he would quit if he was not going to get a raise. Brown asked if he was giving notice or quitting immediately, and Claimant said he was "quitting right now" and handed her his keys. Both managers denied telling Claimant he was being discharged at the meeting and that had Claimant accepted the fact he was not

---

1. All further statutory references herein are to RSMo (2000) unless otherwise indicated.

getting a raise, he could have continued working for Employer. Claimant disputes both of these statements, claiming he was never told he could continue to work for Employer in light of his lack of improvement.

Claimant filed an initial claim for unemployment benefits on June 28, 2007. Employer responded that Claimant was suspended on June 28, 2007 through July 1, 2007, but returned to work full-time on July 2, 2007. Claimant later renewed his claim for benefits in August 2007 after the meeting with Briley and Brown. A deputy determined Claimant was discharged on June 28, 2007, not for misconduct connected with work.

Employer appealed the deputy's decision to the Appeals Tribunal (hereinafter, "the Tribunal"), arguing Claimant voluntarily quit through job abandonment and requested a hearing on the matter. The Tribunal held a telephone hearing on October 16, 2007. Claimant appeared *pro se* and testified on his own behalf. Employer was represented by counsel and offered Briley and Brown as witnesses on its behalf. During his testimony at the hearing, Claimant made reference to the written evaluation he received in June, indicating, "I did send you a copy" to the referee. Despite this reference, no exhibits were marked or formally entered into the record by either party.

The Tribunal issued its decision on November 13, 2007. The Tribunal detailed the conflicting testimony between Claimant and Employer's witnesses, and determined Claimant's recitation was credible. The Tribunal concluded Claimant was discharged on August 16, 2007, when he was informed by Employer that it would "stick with the same policy" to discharge Claimant after his job performance did not improve following the June evaluation. Further, the Tribunal determined this discharge was not for misconduct connected to work, and thus, Claimant was not disqualified from receiving benefits.

Employer filed an appeal with the Commission. In its letter seeking review, Employer specifically stated, "there is no documentation provided by the claimant regarding the employer's intent to discharge him if his work did not improve, nor did he provide a witness which would support his contentions."

The Commission reversed the Tribunal's decision by a 2–1 vote. The Commission found Employer's witnesses more persuasive and determined Claimant failed to meet his burden of proof that he was discharged. The Commission also found there was no intent on Employer's part to discharge Claimant at the August 16th meeting. Thus, the Commission held Claimant voluntarily left his work on August 16, 2007, without good cause attributable to the work or Employer, and was disqualified from receiving benefits.

After the Commission's decision was rendered, Claimant submitted his June 2007 evaluation form to the Commission. Claimant filed a timely appeal to this Court.

■■■ This Court's review of the Commission's decision in an unemployment compensation case is governed by Article V, Section 18 of the Missouri Constitution and Section 288.210. *Shields v. Proctor & Gamble Paper Products Co.,* 164 S.W.3d 540, 543 (Mo.App. E.D.2005). This Court may modify, reverse, remand, or set aside the Commission's decision only when: (1) the Commission acted *ultra vires*; (2) the decision was procured fraudulently; (3) the facts found by the Commission do not support the award; (4) there was not sufficient competent evidence to support the award. *Zimmerman v. City of Richmond Heights,* 194 S.W.3d 875, 876 (Mo.App.

E.D.2006). "The findings of the [C]omission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law." Section 288.210. We must examine the whole record to determine the sufficiency of the evidence to support the Commission's decision. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003); *Daniels v. State Div. of Employment Sec.,* 248 S.W.3d 630, 631 (Mo.App. S.D.2008). We defer to the Commission's determination of the credibility of witnesses. *Zimmerman, supra.*

■ Claimant raises two points on appeal. We address Claimant's second point first for ease of analysis. In his second point, Claimant argues the Commission violated Section 288.200.1 when it failed to examine the material evidence presented to the Tribunal at its hearing. Specifically, Claimant argues the Commission did not consider the importance of the written evaluation and its admonition that Claimant would be terminated if his job performance did not improve. Claimant believes the existence of Employer's intent to terminate him was an essential factual issue which the Commission failed to address.

Section 288.200.1 states in pertinent part: "[T]he commission may affirm, modify, reverse, or set aside the decision of the appeals tribunal on the basis of the evidence previously submitted in such case or may take additional evidence or may remand the matter to the appeals tribunal with directions." Claimant believes the written evaluation was submitted previously to the Tribunal. Claimant argues the

Tribunal "does not refute receipt of these documents and counsel for [Employer] did not object to any such references."

Our review of the record indicates Claimant testified at the Tribunal hearing that "I did send you a copy" in reference to the written evaluation. However, the Tribunal referee did not confirm or deny he received the written evaluation, nor did either party formally offer any exhibits into the record.[2] Claimant testified about Employer's intent to discharge him if he did not demonstrate improvement in his job performance. Moreover, Employer's filing to appeal the Tribunal's decision specifically references Claimant's lack of documentation to support Claimant's argument that Employer intended to discharge him if his job performance did not improve. Later, Claimant resubmitted his written evaluation three weeks after the Commission issued its decision, based upon his belief the Commission did not consider it initially when making its decision.

The Commission chose not to believe Claimant's testimony. The admission of the written evaluation would have been cumulative to Claimant's testimony. Based on the foregoing, we cannot say the Commission violated Section 288.200 and failed to consider evidence previously submitted to the Tribunal. Point denied.

■ In his first point on appeal, Claimant argues the Commission erred in denying him unemployment benefits in that he met his burden of proving he did not leave work voluntarily. Claimant argues he was discharged per Employer's previously stated intent to terminate him, and therefore, should be eligible to receive unemployment benefits.

---

2. We note counsel for the Division of Employment Security conceded at oral argument that Employer and the Tribunal both received the written evaluation. However, counsel also indicated the evaluation was not entered into the record as a formal exhibit, thus arguing the Commission could not consider it.

Generally, a claimant seeking unemployment compensation bears the burden of demonstrating eligibility to receive benefits. *Akers v. Barnes–Jewish Hosp.,* 164 S.W.3d 136, 138 (Mo.App. E.D.2005). Section 288.050.1(1) states a claimant shall be disqualified from receiving unemployment benefits if "the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer." A claimant will be found to have left voluntarily when he or she leaves of his or her own accord, as opposed to being discharged, dismissed, or laid off by the employer. *Fitzpatrick v. Don Brown Automotive Group, Inc.,* 237 S.W.3d 595, 596 (Mo.App. E.D.2007). "When the issue is whether an employee was discharged or quit, the employee—not the employer— bears the burden of proving he was discharged and did not voluntarily quit." *Davis v. School of the Ozarks, Inc.,* 188 S.W.3d 94, 104 (Mo.App. S.D.2006).

This case's outcome turned on the credibility of the witnesses. Claimant urges us to examine language contained within *Hornbuckle Heating and Cooling, Inc. v. Pickering,* 115 S.W.3d 438 (Mo.App. W.D.2003), which he argues would permit us to consider the Tribunal's credibility determination when determining whether an award is against the overwhelming weight of the evidence. In *Hornbuckle,* the appeals tribunal made a credibility determination that the employer's testimony was more credible than the claimant's. *Id.* at 439. The Commission reversed the appeals tribunal's decision and found the claimant was eligible to receive unemployment benefits based upon a purported public policy reason that it must find the claimant more persuasive because "all doubts should be in resolved in favor of the claimant receiving benefits." *Id.*

The Western District reversed the Commission's decision, stating the Commission erroneously applied the law when it acted on a perceived duty to resolve all doubt regarding credibility in favor of the claimant receiving benefits. *Id.* at 440. In reaching this decision, the Western District relied on *Davis v. Research Medical Center,* 903 S.W.2d 557 (Mo.App. W.D. 1995), and its statement that the court could consider the tribunal's credibility determination because "the administrative law judges are in a position superior to the commission to make credibility determinations...." *Id., (citing Davis,* 903 S.W.2d at 571). *Hornbuckle* also cites *Davis* for the proposition that "when the commission disagrees with the administrative law judge's [credibility] determination, its articulating the reasons why it differed in its credibility determinations would greatly aid our review." *Id.*

We note, however, *Davis* was overruled explicitly by *Hampton,* 121 S.W.3d at 223, where the Missouri Supreme Court "sought to simplify the standard of review in cases which the Commission came to a different conclusion than the administrative law judge." *See McCutchen v. Peoplease Corp.,* 195 S.W.3d 421, 425 (Mo.App. S.D.2006)(rejecting the employers' argument that we give "due deference" to the administrative law judge's credibility determinations per the holding in *Davis* ). Thus, while we agree with *Davis* and *Hornbuckle* that an articulation of why the Commission differed in its credibility determinations from the Tribunal would greatly aid our Court's review in this area, we do not agree that we can give the Tribunal's credibility determination "due deference" as Claimant urges in light of the Missouri Supreme Court's decision in *Hampton.*

*Hampton* directs us to examine the whole record to determine the sufficiency of the evidence to support the Commission's decision. *Hampton,* 121

S.W.3d at 222–23. Further, this Court defers to the Commission on issues of fact, but reviews questions of law *de novo. Cotton v. Flik Intern. Corp.,* 213 S.W.3d 189, 192 (Mo.App. E.D.2007). The Commission's determination as to "whether an employee voluntarily left work or was discharged is a factual determination." *Ewing v. SSM Health Care,* 265 S.W.3d 882, 886, (Mo.App. E.D.2008)(*quoting Cotton,* 213 S.W.3d at 193). "When the Commission, as a trier of fact, has reached one of two possible conclusions from the evidence, we will not reach a contrary conclusion even if we might have reasonably done so." *Cotton,* 213 S.W.3d at 192.

Here, there was competent and substantial evidence to support the Commission's decision. The Commission found Employer's witnesses more persuasive. Briley and Brown testified consistently that Employer did not intend to terminate Claimant at the August 16th hearing, but rather, the purpose of the meeting was to inform Claimant he would not be getting a raise. The witnesses relayed Claimant's unhappiness about not getting a raise, how he told them he was going to quit, and he turned in his keys. Finally, both witnesses testified Claimant could have continued working for Employer despite the lack of improvement in his job performance. This evidence supported the Commission's decision that Claimant left work voluntarily without good cause. Point denied.

The Commission's decision is affirmed.

ROY L. RICHTER, P.J., and LAWRENCE E. MOONEY, J., concur.