Michael KNOBBE, Respondent,

v.

ARTCO CASKET COMPANY, INC., Appellant,

and

Division of Employment Security, Respondent.

No. ED 93817.

Missouri Court of Appeals, Eastern District, Division Two.

June 22, 2010.

Michael L. Blumenthal, Kansas City, MO, for appellant.

William E. Roussin, Clayton, MO, for Michael Knobbe.

Shelly A. Kintzel, Jefferson City, MO, for Division of Employment Security.

PATRICIA L. COHEN, Judge.

### Introduction

Artco Casket Company, Inc. (Employer) appeals from the decision of the Labor and Industrial Relations Commission (Commission) reversing the Appeals Tribunal's determination disqualifying Michael Knobbe (Claimant) from receiving unemployment compensation benefits. The Commission found that Claimant was eligible for benefits because he left his employment for good cause attributable to his work or employer. Employer contends that there was not competent and substantial evidence to support the Commission's decision because the Commission ignored evidence and also disregarded uncontroverted testimony without making an express credibility determination. Employer further argues that Claimant failed to meet his burden to prove that he left his employment for good cause. We affirm.

### Factual and Procedural Background

Employer sells and distributes caskets to funeral homes. Claimant worked as a service representative at Employer's St. Louis distribution center beginning in May 1993. Tony Smith initially worked as a fellow service representative with Claimant, but Employer promoted Smith to assistant manager in June 2008. As assistant manager, Smith served as Claimant's immediate supervisor.

On October 16, 2008, Claimant complained to Employer that on the previous day, Smith, while standing near a bathroom, told Claimant "man, I'm so tired I can't even hold my dick up. Will you come and hold my dick?" Claimant filled out a report of the incident that was filed with Employer's main office. Employer hired a consulting firm to investigate the claim. While the investigation was pending, Employer placed Claimant on administrative leave. Claimant returned to work on November 24, 2008. Despite Claimant's complaints, Employer maintained Smith in his position as Claimant's supervisor. Claimant worked on November 25 and then did not return to work. Employer then placed Claimant on medical leave until January 5, 2009, based on a note from Claimant's doctor. Employer terminated Claimant on January 8, 2009.

Claimant filed a claim for unemployment compensation benefits. Employer countered with a protest claiming that Claimant was disqualified for benefits because he voluntarily quit without good cause. A deputy for the Missouri Division of Employment Security determined that Claimant had good cause to quit his employment because a coworker sexually harassed him. Employer filed an appeal from the deputy's determination, and the Appeals Tribunal conducted a telephone hearing. At the hearing, Claimant testified on his own behalf. Three witnesses testified for Em-

ployer: Smith; Ron Davis, the manager of the distribution center; and Ann Molloy, the consultant who performed the investigation.

Claimant testified as follows: Smith frequently made sexual comments. Specifically, Smith rubbed the shoulders of another worker and said "you're a pretty boy, ain't you?" Smith grabbed his crotch and asked Claimant "How's it feel to get your balls back?" when Claimant was discussing a pool table. Smith also asked Claimant to "fill my crack in," an apparent reference to anal sex. Prior to the October incident, Claimant and other coworkers complained to Smith's supervisors, including Davis, about Smith's behavior, but Employer took no action against Smith. Claimant denied making any sexual jokes.

Claimant further testified that Davis initially responded to the October incident by telling Claimant that Smith's behavior was "just Tony." Employer also told him on multiple occasions that he needed to "get over" the incident. Claimant testified that the October incident seriously upset him and that he thought about it frequently. During Claimant's leave, he sought assurances from Employer that he would not be required to work with Smith any longer. Claimant did not believe that Employer took any disciplinary action against Smith. Claimant declined to return to work because he did not want to be exposed to any more harassing behavior or retaliation.

Testifying for Employer, Smith denied Claimant's allegations. Smith testified that Claimant, along with the other workers, frequently made jokes that were sexual in nature. Smith stated that Employer did not discipline him in connection with the October incident other than to ask him to sign a form acknowledging that he understood the sexual harassment policy and a form stating that he would refrain from making sexually-themed jokes. Smith also

testified that Claimant became more sensitive following the death of his brother in June 2008.

Molloy testified regarding her investigation into Claimant's complaint. She interviewed all employees at the distribution center and other employees at the home office. Molloy determined that everyone in the facility, including Claimant, had engaged in inappropriate sexual banter. Molloy confirmed that Smith had touched some employees but determined that it was not sexual in nature. Following her investigation, Molloy recommended that Employer review its sexual harassment policy with its employees and counsel Smith regarding his inappropriate behavior.

Davis testified that Employer implemented Molloy's recommendations. However, Davis admitted that if Claimant had returned to his position, Smith would have continued to serve as his supervisor.

The Appeals Tribunal reversed the deputy's determination and held that Claimant left his employment voluntarily without good cause. Claimant filed an Application for Review with the Commission. The Commission initially issued an order affirming the decision of the Appeals Tribunal. Claimant requested that the Commission reconsider its order. The Commission then set aside its order and reversed the Appeals Tribunal. The Commission determined that Claimant voluntarily left his work for good cause attributable to the work or employer. This appeal followed.

### Standard of Review

This court may modify, reverse, remand or set aside the Commission's decision when: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found

by the Commission do not support the award; or (4) there was no sufficient competent evidence in the record to warrant the making of the award. Section 288.210 RSMo. (2000)[1]; *Sartori v. Kohner Props., Inc.,* 277 S.W.3d 879, 882 (Mo.App. E.D. 2009).

We examine the whole record to determine if there is sufficient competent evidence to support the Commission's decision. *Sartori,* 277 S.W.3d at 883 (citing *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003)). The Commission's findings of fact are conclusive if supported by competent and substantial evidence. Section 288.210; *Sartori,* 277 S.W.3d at 883. Although we defer to the Commission's factual findings, we review de novo questions of law, including the application of the law to the facts, without deference to the Commission. Section 288.210; *Partee v. Winco Mfg., Inc.,* 141 S.W.3d 34, 37 (Mo.App. E.D. 2004).

### Discussion

#### 1. Disregard of Employer's Evidence

In its first point on appeal, Employer claims there was not competent and substantial evidence to support the award because the Commission disregarded both Davis's and Molloy's testimony. In addition, Employer argues that there was not competent and substantial evidence to support the Commission's finding that "Employer took no substantive steps to deter Smith from continuing his established habits," focusing primarily on a November 17, 2008 letter to Claimant.[2]

When reviewing the record and the Commission's findings, we do not "substitute our own judgment for that of the Commission's regarding its evaluation of the evidence relative to its findings." *Scrivener Oil Co., Inc. v. Div. of Employment Sec.,* 184 S.W.3d 635, 638 (Mo.App. S.D.2006). We also defer to the Commission's credibility determinations and determination of the weight to be given to evidence. *Id.* at 639. Finally, the Commission's resolution of conflicting evidence is conclusive. *Id.*

Employer argues the Commission disregarded Davis's testimony establishing that: Employer hired an independent investigator to investigate Claimant's allegations; Employer implemented the investigator's recommendations; and Claimant's demeanor changed following the death of his brother. Contrary to Employer's contention, the record establishes that the Commission considered Davis's testimony. The record also establishes that the Commission did not give Davis's testimony the weight that Employer argues the testimony deserved. We defer to the Commission's determination of the weight given to evidence. *Scrivener Oil Co.,* 184 S.W.3d at 639.

Employer also claims that Davis's testimony established that Claimant had made sexual jokes in the workplace. Employer and Claimant presented conflicting evidence about whether Claimant had engaged in sexual banter at work. The Commission resolved the conflict in favor of Claimant. Where, as here, the evidence supports two opposite conclusions, we are bound by the Commission's resolution of

---

1. All further statutory references are to RSMo. (2000), unless otherwise indicated.

2. In a subpoint, Employer claims that the Commission erroneously found that Employer did not "undertake appropriate remedial measures." The Commission did not explicit-

ly make such a finding. However, to the extent Employer considers "substantive steps to deter Smith" and "appropriate remedial measures" to be equivalent concepts, we address Employer's concerns below.

conflicting evidence. *Ewing v. SSM Health Care*, 265 S.W.3d 882, 887 (Mo.App. E.D.2008).

With respect to Molloy's testimony, Employer argues that the Commission could not disregard it without expressly finding Molloy not credible. Although the Commission did not specifically describe Molloy's testimony as not credible, such a conclusion is implicit in its finding: "[s]ince we have no evidence of who (other than claimant) was interviewed or what they specifically told the investigator, we give no weight to the findings of that firm." Moreover, while we agree that undisputed or unimpeached evidence cannot be disregarded unless an administrative agency makes a specific finding that such evidence is "incredible or unworthy of belief", here Claimant contradicted Molloy's testimony as to the severity of the incident and the allegations that Claimant had also made sexual jokes. *Lagud v. Kansas City Mo. Bd. of Police Comm'rs*, 272 S.W.3d 285, 292 (Mo.App. W.D.2008).

Last, Employer contends that the Commission erred in finding that "Employer took no substantive steps to deter Smith from continuing his established habits." Employer claims this finding was error because the Commission ignored the November 17 letter. As to the letter, the Commission's findings expressly addressed it. The Commission quoted the letter and noted that it "never specifically addressed the October 15 incident." Point denied.

### 2. *Good Cause*

In its second point on appeal, Employer claims that Claimant failed to meet his burden to prove that he left his work for good cause. Specifically, Employer argues that the work environment would not induce a reasonably prudent person to leave his employment. Employer also contends that Claimant did not exercise good faith because he terminated his employment before Employer could resolve Claimant's complaint.

Section 288.050 disqualifies a claimant from receiving unemployment compensation benefits if "the claimant left work voluntarily without good cause attributable to such work or to the claimant's employer." Section 288.050.1(1) RSMo. (Supp.2006). "Whether a claimant's reason for leaving his employment constituted good cause is a legal issue on which we do not defer to the Commission's determination." *Partee*, 141 S.W.3d at 38. Good cause does not have a fixed or precise meaning. *Id.* Instead, good cause depends on an objective analysis of the particular facts of each case. *Ewing*, 265 S.W.3d at 888. The claimant bears the burden of demonstrating good cause for the voluntary departure and must establish two elements, reasonableness and good faith. *Id.*; *Miller v. Bank of the West*, 264 S.W.3d 673, 678 (Mo.App. W.D.2008).

With respect to the "reasonableness" element, a claimant must demonstrate that the circumstances of the claimant's employment would cause a reasonable person to terminate the employment rather than continue working. *Id.* "Good cause is a standard of reason applied to the average person, not to the supersensitive." *Partee*, 141 S.W.3d at 38. The circumstances constituting good cause "must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical...." *Hessler v. Labor & Indus. Relations Comm'n*, 851 S.W.2d 516, 518 (Mo. banc 1993) (internal citation omitted). Abusive conduct or language by a supervisor can constitute good cause. *Partee*, 141 S.W.3d at 38; *Springfield Grocer Co., Inc. v. Sartin*, 49 S.W.3d 817, 821 (Mo.App. S.D.2001); *Streitz v. Juneau*, 940 S.W.2d 548, 551 (Mo.App. S.D.1997).

The record supports a determination that Claimant established the "reasonableness" element of "good cause." Claimant testified that his supervisor, Smith, frequently made sexual jokes. Claimant identified specific instances of Smith's inappropriate conduct. Claimant testified that Smith had rubbed another worker's shoulders and said "you're a pretty boy, ain't you?" Claimant further testified that Smith had previously grabbed his crotch and asked Claimant "[h]ow's it feel to get your balls back?" Claimant also made a reference to anal sex to Claimant. Finally, Claimant testified that Smith asked Claimant, "Man, I'm so tired I can't even hold my dick up. Will you come and hold my dick?" This testimony provides sufficient competent evidence to support the Commission's conclusion that the circumstances would cause a reasonable person to terminate his or her employment.

Employer cites *Ryan v. Motor Technologies Group* for the proposition that Claimant's testimony was insufficient to show circumstances that would cause a reasonable person to quit. 180 S.W.3d 94, 98 (Mo.App. S.D.2005). However, unlike in *Ryan,* Claimant has specifically identified and provided details of the incidents that caused him to quit. In *Ryan,* the claimant complained that her supervisor had used "vulgar language" on two prior occasions, but there was "a lack of detail as to specific incidents." *Id.* Here, Claimant detailed specific incidents where Smith made sexually vulgar comments and gestures.

The record also supports a determination that Claimant established the "good faith" element of "good cause." To establish "good faith," a claimant must demonstrate that he made an effort "to resolve the dispute before resorting to the drastic remedy of quitting his job." *Partee,* 141 S.W.3d at 38. A complaint to the employer about the issue before the claimant quits "is a strong indicator of good faith." *Baby–Tenda Corp. v. Hedrick,* 50 S.W.3d 369, 374–75 (Mo.App. W.D.2001). Management's failure to address prior complaints further supports a finding of good faith in attempting to resolve the current dispute. *See Rodriguez v. Osco Drug,* 166 S.W.3d 138, 143 (Mo.App. W.D. 2005) (noting that good faith does not require an employee complaint if the employer has failed to address previous complaints).

Here, it is undisputed that Claimant attempted to resolve the issue before he terminated his employment. Prior to the October incident, Claimant asked Smith to stop making inappropriate comments and reported Smith's behavior and comments to Employer. Despite the complaints, Claimant testified that Employer did not stop Smith's inappropriate behavior. Employer's failure to address past concerns about Smith's behavior supports the determination that Claimant exercised good faith prior to leaving. *See Rodriguez,* 166 S.W.3d at 143. Following the October incident, Claimant reported his complaints regarding Smith's conduct to the manager of the distribution center and filed a report with Employer's main office. Claimant's filing of multiple complaints prior to quitting is a strong indication that he exercised good faith in attempting to resolve the issue. *Baby–Tenda Corp.,* 50 S.W.3d at 375.

Employer contends that Claimant failed to exercise good faith because he quit without providing Employer an opportunity to resolve his most recent complaint. In particular, Employer claims that it adjusted Claimant's work schedule to ensure that Smith was not the only manager present when Claimant worked. Employer also required Smith to sign forms acknowledging Employer's sexual harass-

ment policy and that Smith would refrain from making sexual comments. However, Employer argues that Claimant quit before these changes could resolve his complaint.

In *Springfield Grocer*, the court addressed facts similar to those here. 49 S.W.3d at 821. There, the employer offered to have the claimant report directly to the grocery store's director of operations rather than the former supervisor who had verbally harassed the claimant. *Id.* The claimant declined the offer and quit. *Id.* The Commission found that the claimant had good cause to terminate her employment. *Id.* at 819–20. The court affirmed the Commission, concluding that the claimant had exercised good faith because claimant was not required to continue to work in close proximity to her harasser. *Id.* Here, Employer expected Claimant to continue to work with Smith as his immediate supervisor despite Smith's conduct. As in *Springfield Grocer*, Claimant's refusal to continue to work as Smith's subordinate is not inconsistent with an exercise of good faith in terminating his employment. Point denied.

### Conclusion

The Commission's decision is affirmed.

SHERRI B. SULLIVAN, P.J., and ROBERT G. DOWD, JR., J., Concur.