**Ray Lynn RUFER, Appellant,**

v.

**Phil RAUCH, and Missouri Division of Employment Security, Respondents.**

**No. SD 31574.**

Missouri Court of Appeals, Southern District, Division Two.

March 15, 2012.

John J. Ammann, St. Louis, MO, for Appellant.

Shelly A. Kintzel, Jefferson City, MO, for Respondent Division of Employment Security.

WILLIAM W. FRANCIS, JR., Presiding Judge.

Ray Lynn Rufer ("Rufer") appeals the decision of the Labor and Industrial Relations Commission ("Commission") disqualifying her from unemployment benefits because she failed to demonstrate good faith in voluntarily terminating her employment. We affirm the Commission's decision.

### Factual and Procedural History

From April 18, 2011, until May 19, 2011, Rufer was employed as an assistant at a transportation business owned and operated by Phil Rauch ("Rauch") in Billings, Missouri. When Rufer was interviewed for the position, Rauch made it "very clear" that foul language was used in the work environment. Rauch told Rufer: "[Y]ou know, you're working in a trucking atmosphere, you're dealing with drivers and stuff like that. Everything's not sugar coated. It's not like working anywhere else[.]" Rufer responded that she had raised two sons and nothing bothered her. Rauch responded, "[W]ell, okay, I just want to make that very clear to you because that is the way it is around here."

About a week before Rufer resigned, Rufer came in early to talk to Rauch about her hours. Specifically, Rufer wanted to confirm Rauch would be able to consistently give her forty hours a week. Rauch then also raised the issue of Rufer's rela-

tionship with her co-workers, L.J. and Jenny. Rauch brought this issue up because he "knew that there was a little bit of hard feelings between a couple of them in the office[.]" Rauch acknowledged that it could be difficult to work with L.J. and Jenny. When Rauch asked Rufer whether it was "rough" working there, Rufer commented that she "[could] handle it," it was "no big deal," as she had raised two sons as a single mom.

Rufer acknowledged that Rauch raised this issue, but Rufer explained: "I didn't ever feel free to talk about that to anybody because it was already apparent that [L.J. and Jenny] didn't like the fact ... that I didn't participate in their foul language and their sexual content, so why was I going to go in and tell [Rauch] that[?]"

Rufer testified that her conversation with Rauch "became public knowledge." Rufer testified that L.J. and Jenny became more hostile towards her after she met with Rauch. Rauch, however, testified that his conversation with Rufer was "a private conversation." He explained that when the other employees arrived at work, they could see that Rufer and Rauch were speaking and later asked Rauch what it was about. Rauch told them that Rufer "was just asking me about hours. I did not go in to [sic] any other personal stuff, or anything like that." Rauch testified that "anything else that was said must have been something that somebody made up or hearsay because I don't even talk about hourly wages or anything between any of my employees."

On May 18, 2011, Rufer arrived to work at 7:50 a.m. L.J.'s car was there, but Rauch's truck was not, which was unusual. Rufer knocked on all the doors and no one answered. It was cold and raining, so Rufer returned to her car, and then eventually went around to the back door, which was unlocked. L.J. was in the office. Rufer testified that L.J. heard her knocking and intentionally did not let her inside. Rufer also testified that Jenny was "in one of her moods" that morning and would not talk to her.

Rauch testified that it was likely L.J. would not have heard anyone knocking on the door, especially as it was raining, and L.J. was on the phone.

Rufer went home for lunch on May 18 and called the unemployment office. Based on her conversation, Rufer believed that she was within the 28–day exception found in section 288.050.1(1) [1] for leaving a job that was unsuitable.

Rufer decided that although she had done her best to make the job work, she was unhappy, stressed, and worn out from working in such an environment. Therefore, on May 19, 2011, before work, she e-mailed Rauch her resignation stating that the job was "simply not a good fit" for her. Rufer further stated that:

I am not thin skinned and my feeling [sic] are not hurt, it's just that I don't want to feel as if I have to put on boxing gloves everyday [sic] to come to work there. I know that it is more than obvious that the language and content of much of the conversations do not set [sic] well with me and I can not [sic] and will not lower my standards just to try to fit in. I am not preaching at anybody or judging anybody, it's just not for me. I have no ill feelings against anybody in particular, but for the atmosphere as a whole.

When asked at the hearing why she quit, Rufer testified that it was because L.J. and Jenny did not like her and there was cursing and sexual language, which she felt created a "hostile" environment.

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

Rufer testified that she did not address the language issue with Rauch because "how am I supposed to change the ... dynamics of a whole family in a working atmosphere that's been in place long before I came along[,]" and "[t]hey already had their dynamics in place ... I can't come in and change that for them. And it wasn't my place[.]"

Rufer filed a claim for unemployment benefits. Rauch protested on the basis that Rufer had "quit without notice." The Division's deputy determined that Rufer was disqualified from receiving benefits because she did not have good cause for leaving work voluntarily in that she "DID NOT ADDRESS HER CONCERNS WITH ANYONE IN AUTHORITY PRIOR TO QUITTING." Rufer appealed to the Division's Appeals Tribunal ("Tribunal"). The Tribunal held a telephone hearing on July 1, 2011. The Tribunal found Rauch more credible than Rufer on the issues in which there were discrepancies. The Tribunal made a factual finding that Rufer had "met with her supervisor approximately one week before she resigned," where Rufer "brought up the situation concerning her hours," but she "did not mention the fact that her co-worker was making her uncomfortable and did not inform [Rauch] she was considering quitting." The Tribunal's decision included the following conclusions of law:

> [Rufer] quit her job mostly due to the fact that one of her co-workers would use profanity and make comments that were sexual in nature. An average person acting with reason would probably have quit under the same circumstances. However, good faith is an essential element of good cause. The competent and substantial evidence was that [Rufer] quit without any advance notice by send-

ing [Rauch] an email. [Rufer] did not take any steps to make [Rauch] aware of the issue with the co-worker much less allow [Rauch] time to remedy the situation. Therefore, [Rufer] has not demonstrated good faith.

Rufer appealed to the Commission. The Commission unanimously affirmed and adopted the Tribunal's decision. This appeal followed.

Rufer contends the Commission erred in ruling she did not act in good faith because she discussed her concerns with Rauch prior to her resignation and Rauch was aware of her concerns, yet failed to take any sincere actions to rectify those issues. The primary issue pertinent to our resolution of this appeal is whether Rufer met her burden of establishing she acted in good faith in voluntarily quitting her employment.

### Standard of Review

∎ Pursuant to section 288.210, this Court may reverse, modify, set aside or remand a decision by the Commission only on the following grounds: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was no sufficient competent evidence in the record to warrant the making of the award.[2] *Dixon v. Stoam Industries, Inc.*, 216 S.W.3d 688, 692 (Mo.App. S.D.2007). "We will affirm the Commission's award 'if there is sufficient competent and substantial evidence to support the award.'" *Murphy v. Aaron's Automotive Products*, 232 S.W.3d 616, 620 (Mo.App. S.D.2007) (quoting *Peoples v. ESI Mail Pharmacy Servs., Inc.*, 213 S.W.3d 710, 711 (Mo.App. E.D.2007)). "Whether the award is sup-

---

**2.** The Commission adopted the Tribunal's decision, therefore, when reviewing the order of the Commission, this Court examines the decision of the Tribunal.

ported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003).

■ " 'Whether a claimant's reason for leaving his employment constituted good cause is a legal issue on which we do not defer to the Commission's determination.' " *Knobbe v. Artco Casket Co., Inc.,* 315 S.W.3d 735, 740 (Mo.App. E.D.2010) (quoting *Partee v. Winco Mfg., Inc.,* 141 S.W.3d 34, 38 (Mo.App. E.D.2004)). " 'We, however, must accept the Commission's judgment on the evidence and defer to the Commission on determinations regarding weight of the evidence and the credibility of witnesses.' " *Murphy,* 232 S.W.3d at 620 (quoting *Silman v. Simmons' Grocery & Hardware, Inc.,* 204 S.W.3d 754, 755 (Mo.App. S.D.2006)).

### Analysis

■ Section 288.050 disqualifies a claimant from receiving unemployment compensation benefits if "the claimant left work voluntarily without good cause attributable to such work or to the claimant's employer." § 288.050.1(1). "[G]ood cause depends on an objective analysis of the particular facts of each case." *Knobbe,* 315 S.W.3d at 740. "The claimant bears the burden of demonstrating good cause for the voluntary departure and must establish two elements, reasonableness and good faith." *Id.*

■ Here, the Commission found Rufer established the reasonableness element.[3] The Commission, however, found Rufer failed to establish the good-faith element in that "[Rufer] did not take any steps to make [Rauch] aware of the issue with the co-worker" and failed to allow Rauch time to remedy the situation. Rufer specifically contends this finding is erroneous because she attempted to resolve her dispute prior to her resignation, she reasonably believed that any further attempts to resolve her issues would have been futile, and Rauch failed to make an attempt to rectify Rufer's issues despite being fully aware of them.

■■ With respect to the "good-faith" element, a claimant must demonstrate that she made an effort " 'to resolve the dispute before resorting to the drastic remedy of quitting [her] job.' " *Knobbe,* 315 S.W.3d at 741 (quoting *Partee,* 141 S.W.3d at 38).

> In many cases, good faith will require a communication to the employer of the employee's problems or concerns. This is intended to provide the employer with an opportunity to correct or ameliorate conditions that the employer did not know about or *did not know were a cause of concern to the employee.*

*Cooper v. Hy–Vee, Inc.,* 31 S.W.3d 497, 504–05 (Mo.App. W.D.2000) (emphasis added). An exception exists, however, where it is clear that it would be futile to attempt to work through conditions otherwise justifying resignation. *Cf. Cooper,* 31 S.W.3d at 505 (a prior complaint by the employee to management is not necessary for good faith when evidence suggested that employee's change in duties was substantial and that employer's motives were not sincere); *Rodriguez v. Osco Drug,* 166 S.W.3d 138, 143 (Mo.App. W.D.2005) (noting that good faith does not require an employee complaint if the employer has failed to address previous complaints).

■ First, Rufer contends she attempted to resolve her dispute with Rauch prior

---

**3.** To establish the "reasonableness" element, Rufer "must demonstrate that the circumstances of [her] employment would cause a reasonable person to terminate the employment rather than continue working." *Knobbe,* 315 S.W.3d at 740.

to her resignation in that during her meeting with Rauch they discussed some of the issues she was having with her employment. While Rufer met with Rauch prior to her resignation, she did not express to Rauch that these conditions were concerning to her. In fact, when Rauch asked about whether it was a rough working environment, Rufer expressed to Rauch that she "could handle it," and it was "no big deal." From the evidence, it appears Rauch was aware of some of the issues in the work environment and specifically sought to determine if such conduct was a cause for concern to Rufer. From this inquiry, he was assured—based on Rufer's comments—that this work environment was not a concern for her. During oral argument, Rufer's counsel agreed an employer can rely on its employee's assurances. Thus, we find substantial evidence supported the Commission's conclusion that Rufer did not make an attempt to resolve her dispute prior to her resignation.

■■■ Rufer also contends that any further attempts to resolve the issues would have been futile. We, however, do not find these circumstances indicate that such an attempt would be futile. Again, Rauch specifically asked Rufer in their meeting whether her work environment was rough, to which Rufer affirmatively denied this conduct was a concern to her. The fact that Rauch initiated this discussion with Rufer supports a reasonable inference that he was attempting to decipher whether or not there was an issue that needed to be addressed. Thus, Rufer's denial to Rauch that the working environment was of concern to her demonstrates that she did not act in good faith. Again, Rufer admitted an employer can rely upon its employee's assurances. This denial deprived Rauch the opportunity to ameliorate such working conditions. *See Partee*, 141 S.W.3d at 38–39 ("distasteful, abhorrent comments and conduct" by a supervisor did not remove employee's duty to provide to human resources the details necessary to investigate the matter before quitting).

The Commission did not err in concluding Rufer failed to meet her burden of establishing she acted in good faith in voluntarily quitting her employment. Point denied. The decision of the Commission is affirmed.

BATES and SCOTT, JJ., Concur.